AMERICAN JEWISH JOINT DISTRIBUTION
COMMITTEE *v.* EISENBERG, EXECUTOR

[No. 49, October Term, 1949.]

204

*Decided December 15, 1949.*

*Rehearing denied January 17, 1950.*

The cause was argued before MARBURY, C. J., DELA-
PLAINE, COLLINS, GRASON, HENDERSON and MARKELL, JJ.

*Clarence Lippel,* with whom were *Eli Rock* and *David
Kauffman* on the brief, for the appellant.

*D. Lindley Sloan* and *William L. Wilson, Jr.,* with
whom was *Edward J. Ryan* on the brief, for the appellee.

DELAPLAINE, J., delivered the opinion of the Court.

Martha W. Stern, of Frostburg, who died on October
4, 1946, left a will making specific pecuniary bequests
totaling $98,500 and leaving the residue of her estate
to American Jewish Joint Distribution Committee, ap-
pellant. The estate was appraised in the Orphans' Court
of Allegany County at $250,404.59. Loraine Eisenberg,
executor, stated his first administration account on No-
vember 4, 1947, but did not pay the legatees at that
time. On October 29, 1948, he instituted this suit against
the legatees for the purpose of obtaining the direction
of the Circuit Court for Allegany County in the admin-
istration of the estate.

On March 3, 1949, the chancellor passed a decree
which, among other things, directed that no interest
should be allowed on any of the bequests. On March
18 two of the legatees prayed for reargument of the case
and modification of the decree. At the hearing on their
petition, the executor testified that he had made earnest
efforts to ascertain the amount of the Federal estate
tax, and the Internal Revenue Bureau had expressed
doubt as to whether the residuary legatee should be
exempt from the Federal estate tax. Influenced by the
executor's narrative, the chancellor on April 19 passed
a second decree striking out the challenged portion of
the decree of March 3, and ordering that interest at the

rate of 3 per cent be allowed on the pecuniary bequests from October 4, 1947. The chancellor said in his opinion that it was agreed at the hearing that if interest should be allowed, it should be at the rate of 3 per cent. He accepted this agreement with the comment that it would not work any hardship upon the residuary legatee, inasmuch as the total interest will not be out of line with the income of the estate during the administration. The appeal is from the second decree.

The Maryland Testamentary Act provides that every administrator shall render to the Orphans' Court the first account of his administration within the period of twelve months from the date of his letters. If the first account shall not show the estate to be fully administered, another account shall be rendered within six months thereafter, and, within every term of six months thereafter, an account shall be returned until the estate shall appear to be fully administered. Code 1939, art. 93, secs. 1, 2.

It is a basic principle that an executor acts as a trustee for all persons interested in the estate, and he should be diligent and faithful in the discharge of his trust. *Gordon v. Small,* 53 Md. 550, 556; *Sullivan v. Doyle,* 193 Md. 421, 430, 67 A. 2d 246, 250. Moreover, it is evident that prompt payment of the funds of an estate to the beneficiaries is a duty which is just as imperative as prompt collection of the funds. Accordingly, where an executor has retained the assets of the estate unproductive without any apparent reason or necessity, he is guilty of negligence and breach of trust and the Orphans' Court should charge him with interest. *Mickle v. Cross,* 10 Md. 352, 363; *Ing v. Baltimore Ass'n. for Improving the Condition of the Poor,* 21 Md. 426, 432; *Cook v. Aronheim,* 186 Md. 138, 146, 46 A. 2d 108. The personal liability of an executor to the legatees for interest because of delay in paying the legacies depends upon whether the delay was reasonable or unreasonable. Where the delay is reasonable, the executor is free from personal liability for interest; where the delay is unreasonable,

he is chargeable with interest. What constitutes unreasonable delay in making settlement rendering the executor personally liable for interest depends upon the facts and circumstances of each particular case. The inquiry is whether, under all the facts and circumstances of the case, a man of ordinary prudence dealing with his own funds in his own interest would have retained the money instead of delivering it at the time ordinarily required.

The policy of the Testamentary Act has been to promote the prompt administration and settlement of estates. *Collins v. Carman*, 5 Md. 503, 534; *Barrett v. Clark*, 189 Md. 116, 54 A. 2d 128, 132, 173 A. L. R. 188. Section 106 directs that an administrator shall discharge all just claims known to him, or pay each claimant his just proportion of the money then in his hands, within thirteen months from the date of his letters, or within such further time, not exceeding four months longer, on his making oath that he has reason to apprehend that the personal estate and assets will be insufficient to discharge the debts of and claims against the deceased; and it shall likewise be his duty, once in every term of six months, after the first distribution, to make a distribution of the money which has since come to his hands, until he shall have fully administered, and on failure his administration bond may be put in suit. Section 108 provides that if any claim be known to the administrator, he shall retain the assets, or a just proportionable part, for the benefit of the creditor, provided that he can satisfy the court that such claim is just or may probably be recovered; and when it is certain that there is a claim of a person out of the State, but the amount thereof cannot be ascertained, the court may allow such sum as it may think proper to be retained, to be accounted for if within three years after the death of the deceased no demand shall be made by the creditor. The object of this provision is to expedite the settlement of estates by requiring the administrator or executor to retain a sufficient amount to meet outstanding claims

without delaying distributees or legatees by postponing the final account until all the claims have been settled. *Pole v. Simmons*, 49 Md. 14, 20.

In this case the executor, in making his excuse for his delay, said that he was unable to find out the amount of the Federal estate tax until nearly two years after the probate of the will, and that he was not willing to pay any bequests until he could find out the amount of the tax. He said that he made trips to Baltimore and Washington in his efforts to ascertain the amount of the tax, but it was not until September, 1948, that the Internal Revenue Bureau made its first ruling. At that time the Bureau ruled that the tax on the entire estate was $41,531.06. He then instituted an action in the United States District Court to contest the ruling, and thereupon the Bureau speedily set the tax at $10,827.71. The Internal Revenue Code provides that if the executor makes written application to the Commissioner of Internal Revenue for determination of the amount of the tax, the Commissioner, within one year after the making of such application, or, if the application is made before the return is filed, then within one year after the return is filed, shall notify the executor of the amount of the tax. Upon payment of the amount of which he is notified, the executor is discharged from personal liability for any deficiency in tax thereafter found to be due. 26 U. S. C. A., § 825. The executor in this case evidently delayed in making application to the Commissioner for determination of the amount of the tax. In many cases it may not be advantageous to make this application, but in the instant case we think it was, as it is manifest from the facts that the executor could have paid the tax with benefit to the estate.

We can see no reason to make the legatees suffer loss because of the executor's delay. Of course, pending or threatened litigation which might seriously diminish the assets of an estate, thereby complicating the accounts if there were a distribution, might excuse delay in making settlement and relieve the personal representative

from liability or interest. But in this case the executor had sufficient assets to pay the specific pecuniary legacies when he stated his first account in November, 1947. At that time he had United States Government bonds valued at $77,043.58, other securities valued at $58,161.64, real estate valued at $15,722, and $109,773.55 in cash. Thus the total assets of the estate amounted to $260,700.77. The largest claim still unsettled was that of the Federal Government for its estate tax. In 1948 the Government claimed $37,181.06 in addition to the sum of $4,350 paid in 1947. Even if the executor had actually been compelled to pay $37,181.06, he could have paid that amount and also his own commission and a reasonable counsel fee, and he would still have had enough to pay all specific bequests, and would have had approximately $100,-000 left over for the residuary legatee. It is manifest that he kept the assets of the estate without any sufficient reason.

We therefore conclude that the chancellor erred in ruling that interest on the pecuniary bequests was a charge against the residuary estate. The executor should be personally charged with interest on these bequests from the due date of the first administration account, *i.e.*, one year after the date of his letters. *Cook v. Aronheim,* 186 Md. 138, 146, 46 A. 2d 105. We will not alter the agreement made in open court that any interest held payable shall be at the rate of 3 per cent.

*Decree reversed and case remanded for the passage of a decree in accordance with this opinion, the costs to be paid by Loraine Eisenberg individually.*