KOLKER, Executor, et al. *v.* KOLKER et al.
(Three Appeals In One Record)

[No. 174, September Term, 1959.]

*Decided April 13, 1960.*

254

The cause was argued before BRUNE, C. J., HENDERSON, HAMMOND, PRESCOTT and HORNEY, JJ.

*Joseph P. Rieger, Harry Goldman, Jr.,* and *Charles B. Levering,* with whom were *Hilary W. Gans* and *Joseph W. Spector* on the brief, for the appellants.

*H. Emslie Parks* and *Z. Townsend Parks, Jr.,* for the appellees.

HORNEY, J., delivered the opinion of the Court.

This is an appeal from a summary judgment in favor of three infants against the executors of an estate and their surety for the aggregate amount of separate pecuniary legacies bequeathed to them by their grandfather but never paid. The executors, seeking reversal, claim the infants were not entitled to a judgment as a matter of law.

Morris Kolker died September 25, 1951, eleven days after he had executed his last will and testament. Among other things, he bequeathed $20,000 in the aggregate to his wife, two sons and a daughter, $4,000 to a sister and a niece, $2,000 to several charities and $18,000 to his grandchildren. The last mentioned bequest included legacies aggregating $5,000 to Louis, Diann and Donna Kolker, (the infants or infant plaintiffs), children of Reuben, a son of the testator. The rest and residue of the estate was bequeathed in trust to his son and son-in-law, Milton Kolker and Leon Lebow, who were also named executors. Income from the trust estate, during the lifetime of his widow, was payable 60% to her and the remaining 40% was divided equally between his son Milton and his daughter. At the death of the widow one-third of the estate was bequeathed to his daughter; one-third to his son Milton and one-third to his son Reuben in trust.

The trustees were authorized to pay Reuben $2,000 per year during his life from principal and/or income and, in their discretion, to finance a business adventure for him to the extent of $25,000. In the event his share was not exhausted in his lifetime, his children—Louis, Diann and Donna—were to receive the remainder.

Among other things, the executors, during the period of administration of the personal estate, and the trustees, during the continuance of the trust estates, were further authorized and empowered, without application to a court for approval or ratification and without liability for loss or depreciation, (a) to sell, exchange, invest and reinvest the assets of the estates; (b) to compromise and settle claims against the estates; and (c) to continue as a partner in any business in which the testator was engaged at the time of his death, to carry out the terms of any partnership agreement into which he had entered, to invest part or all of the assets of the personal estate or trust fund as capital in such partnership, to continue such agreement so long as the executors or trustees deemed it best for the interest of his beneficiaries, and to terminate the partnership and join in the transfer of such partnership to any other business or to a corporation in exchange for an interest therein.

At the time of his death the testator was not engaged as a partner in any business, but he owned 50% of the capital stock of the Maryland Grocery Company, Inc., which had recently taken over the assets and business of a partnership in which the testator had had an interest. The personal estate was inventoried at $180,700, which, together with the cash receipts of $22,158.90, made a gross estate of $202,858.90, according to the administration account filed October 24, 1953. The total disbursements for funeral expenses, administration costs and executors' commissions, and the debts of the decedent, including the federal estate tax, amounted to $39,504.62, which left a balance for distribution of $163,354.28. Payment of the bequests aggregating $20,000 to the wife, daughter and two sons were waived. The bequests [$4,000] to the sister and niece as well as the bequests [$2,000] to the several charities were distributed to them and paid in full. The in-

heritance taxes [$506.14] on all of the pecuniary legacies were likewise paid in full. But the bequests to the grandchildren [$18,000], including the aggregate sum of $5,000 bequeathed to the infant plaintiffs, although entered in the account as having been distributed to them, was not paid. The shares of stock in the grocery company were distributed to the trustees under the will, less credit, however, for the administration expenditures [$40,010.76] and all bequests not waived [$24,000], aggregating $64,010.76, which, according to a notation in the distribution account to that effect, were "advanced by [t]rustees [to the executors] and waived." The administration and distribution accounts were passed by the court upon the oaths of the executors that "they had paid or secured the payment of every sum" for which they had craved allowance.

At a hearing before the Orphans' Court on February 24, 1959, one of the executors testified, and the other stipulated, that the legacies had not been paid and that there was no money in the hands of the executors or in the trust estate with which to pay the sums due the infant plaintiffs.

When, on March 26, 1959, suit was filed on behalf of the infants, by their mother and next friend, and the State of Maryland, to the use of the infants, against the executors and the surety on their bond, a motion for a summary judgment—on the ground that there was no genuine dispute as to any material fact—was filed at the same time. In the affidavit accompanying the motion, the mother as next friend stated that no part of the legacies had been received by or for the infants; that the executors in open court had admitted nonpayment of the legacies and that they had no money in hand with which to pay such legacies; that an administration bond in the penalty of $90,000 had been issued by the Fidelity and Deposit Company of Maryland (surety); and that there was justly due and owing to the infants the total sum of $5,000, with interest from October 24, 1952.

All of the defendants filed pleas and affidavits of defense. Milton Kolker, one of the executors, filed a general issue plea and in his affidavit stated that there had never been any cash in the personal estate for the payment of the legacies; that

the immediate family of the decedent had entered into a family settlement or agreement, in which, among other things, it was agreed by Reuben, as natural guardian on behalf of his children, that all cash legacies under the will, with the exception of those to the sister and niece of the deceased and to the charities named in the will, should be waived and released without payment, in order that the shares of stock of the decedent in the grocery company could be kept intact in the trust estate created by the will for the benefit of all concerned, including the infants who had a contingent remainder (if there should be any remainder) in the trust estate—one-third of the original trust fund—bequeathed to their father at the death of the widow; that such settlement represented the only prudent course to follow in order to preserve the value of the trust estate for the benefit of all the legatees under the will and beneficiaries under the trust; that all of the other parties, infants as well as adults, had made similar waivers; that said family settlement released the affiant from liability for the presently demanded payments; and, lastly, that what was done by the affiant was done on the advice of counsel. The affidavit of Leon Lebow, the other executor, was substantially the same, but he pleaded *plene administravit.*

The surety filed the general issue pleas usually filed in an action *ex contractu* as well as in an action *ex delicto,* and claimed the subrogation rights afforded it by Maryland Rule 617 in the event judgment was entered against the principals and surety. In its affidavit, the surety denied personal knowledge of the facts and, pursuant to Rule 610 d 2, moved the court to deny the motion for summary judgment.

The trial court, in extending a judgment for $7,075, apportioned it as follows among the infant plaintiffs: $3,000 to Louis, plus interest from October 24, 1952, in the sum of $1,245, or a total of $4,245; $1,000 to Diann, plus interest of $415, or a total of $1,415; and $1,000 to Donna, plus interest of $415, or a total of $1,415. Apparently the interest was calculated from one year after administration had begun instead of from the death of the testator.

On this appeal, the executors and the surety (the defendants collectively), in contending that there was a genuine dis-

pute of a material fact, claim (i) that the testator intended that the executors should retain all of the assets of the estate so as to continue what was in effect the testator's "partnership" interest in the incorporated grocery company; (ii) that a court—had application therefor been made—would have authorized the executors to retain the shares of stock in the grocery company rather than sell part to pay legacies; and (iii) that the defendants are not liable for interest on the legacies.

## (i) and (ii)

We find nothing in the will to indicate or even suggest that the testator ever had any intention that the pecuniary legacies he bequeathed to his grandchildren should not have *absolute* priority over the residuary bequests and be paid before any part of the personal estate was distributed to the trustees in trust for the residuary legatees. If the will is read as we read it, the duties of the executors seem simple and uncomplicated. Under it the executors were required to do no more than take possession of the personal estate, discharge the debts of the testator and the administration expenses, and pay over the legacies to the legatees in the order directed by the will. *Woods v. Fuller,* 61 Md. 457 (1884); Bagby, *Maryland Law of Executors and Administrators,* § 134 (2d and rev. ed. 1927). But the executors chose to disregard the lawful order of distribution and gave to the residuary legatees that priority which should have been given to those pecuniary legatees—the grandchildren—who had not been paid. The reason, apparently, was because the executors had incorrectly assumed they had a duty to preserve the value of the trust estate for the benefit of the trust beneficiaries without regard to the circumstances. Clearly the executors had no such *duty* under the will. There is no doubt that the terms of the will did not specifically *require* the executors to continue the fifty-fifty control which the testator had at the time of his death over the corporate grocery business regardless of the lack of cash in the estate of the testator. Neither could they do so lawfully under the guise of a "family settlement" to the detriment of those persons who were under disability because of their infancy. Had all of the pecuniary legatees been adults, as were the widow, daughter and sons of the testator, the

situation would have been different. See *White v. Roberts,* 145 Md. 405, 125 Atl. 733 (1924); *Surratt v. Knight,* 162 Md. 14, 158 Atl. 1 (1932); *Hohman v. Hohman,* 164 Md. 594, 165 Atl. 812 (1933); 2 Sykes, *Probate Law and Practice,* § 931 (1956). But, such unwarranted attempt, by agreement or otherwise, to impair, destroy or alter the rights or priority of legatees, other than the rights of those who were *sui juris,* during the course of the administration of an estate, was patently invalid and cannot be countenanced. *Steuart v. Carr,* 6 Gill 430, 443 (1848). Furthermore, the claim by the executors that what they did concerning the administration of the estate was done on the advice of counsel does not excuse the executors from their unwise acts. If the executors left the solution of their problems to the judgment of their attorney as they claim, his solution of those problems was their solution.

In any event, we think the lower court was right when it determined that there was no genuine dispute as to any material fact and that the moving parties were entitled to a judgment as a matter of law. See *Cox v. Sandler's, Inc.,* 209 Md. 193, 120 A. 2d 674 (1956). The opposing affidavits sought only to set up a justification which was not well founded as a matter of law. They did not contradict any of the material facts upon which the judgment was based.

(iii)

The objection of the executors to the allowance of interest was based on the same ground on which they denied liability for the principal of the legacies. Since that ground failed as to the principal, it also failed as to the interest. Cf. *American Jewish Joint Dist. Comm. v. Eisenberg,* 194 Md. 203, 70 A. 2d 44 (1949). There was no challenge to the amount of the interest allowed if any was properly allowable.

We see no need to grant the motion to dismiss the appeal of Leon Lebow. Even if we assume, without deciding, that the appeal as to him was not taken within the time fixed by the rule, a dismissal could have no other practical effect than an affirmance of the judgment will have.

*Judgment affirmed, the appellants to pay the costs.*