**HARTFORD ACCIDENT AND INDEMNITY COMPANY, a corporation, Appellant,**

v.

**Johanna AIELLO, Executrix of Estate of Peter Aiello, et al., Appellees.**

**No. 73-2042.**

United States Court of Appeals, Fourth Circuit.

Argued Jan. 8, 1974.

Decided May 20, 1974.

George W. Shaffer, Rockville, Md. (Carr, Bonner, O'Connell, Kaplan, Thompson & Diuguid, Rockville, Md., on brief), for appellant.

Richard C. Whiteford, Towson, Md. (W. Hamilton Whiteford, Whiteford, Taylor, Preston, Trimble & Johnston, Baltimore, Md., on brief), for appellees.

Before FIELD and WIDENER, Circuit Judges.

JOHN A. FIELD, Jr., Circuit Judge:

Claiming that a release it gave to two defendants in this suit, Johanna Aiello, Executrix of the Estate of Peter Aiello, and Paramount Construction Company, Inc. (Paramount), was induced by a fraudulent representation and concealment by Johanna Aiello of the true ownership of a farm in Kent County, Maryland, Hartford Accident and Indemnity Company (Hartford) filed a motion to set the release aside and reinstate its original claim against the two defendants. Following an evidentiary hearing the district court denied the motion and Hartford thereafter filed this appeal.

The facts incident to this controversy were found by the district court to be as follows. In 1968 Paramount, a family business of Peter Aiello, entered into a joint venture agreement with Bacon & Passarelli, Inc., to install sewer lines in St. Mary's County, Maryland. The parties obtained the necessary surety bonding from Hartford and incident thereto Peter Aiello submitted to Hartford a hand-drawn financial statement which listed the assets he and his wife, Johan-

na, owned as of December 31, 1967. Reflected on the statement were several real estate holdings including the Kent County farm. Peter Aiello was requested by Hartford to assume personal liability for defaults in the project by way of specific indemnity agreements, but Johanna did not assume any such liability. The sewer project soon ran into difficulties and Hartford provided financing to keep the project moving, but eventually was required to pay out substantial sums under the surety bonds it had issued. Hartford then sought to recoup the amounts it had expended from the corporations involved and from Peter Aiello individually.

Peter Aiello died on October 4, 1969, and Johanna qualified as Executrix of his estate. Aiello's estate was insolvent and Hartford filed a claim in the probate proceedings and later instituted the present action to reduce its claim to judgment, the total amount of the claim being $222,183.89.

Sometime in March of 1970 an attorney for Hartford was checking the file of the probate proceedings in the Baltimore County Court House and found an Information Report which had been executed by Johanna as Executrix. This report is required by Maryland law [1] to inform the tax authorities with respect to interests in property, both real and personal, owned by a decedent and subject to the Maryland inheritance tax. Among other things, the reporting form inquired whether the deceased owned any interest as a joint tenant in any real or personal property and, if so, the name and address of the joint owner and the nature of the property so owned. The report in the Aiello file stated that the decedent had owned joint property on the date of his death and that Johanna Aiello was the joint owner. The nature of the property was cryptically stated as "Farm—Land, Mortgages, Real Estate." On the basis of this report Hartford's attorney concluded that all of Peter Aiello's real estate was jointly held with

his wife and that the estate was probably insolvent. No further check of the probate proceedings was ever made by Hartford subsequent to this first inquiry, and the only other investigation in regard to Peter Aiello's assets was a check of the St. Mary's County land records which revealed that he owned no real estate in that county. Hartford conducted no title checks with respect to the other property listed in the financial statement which Peter Aiello had submitted to it in 1968, although that statement did not expressly represent that all of the property listed thereon was held jointly by Peter and Johanna.

At the time of his death Peter Aiello's entire family believed that all of his real estate, including the Kent County farm, was owned jointly with his wife and when Johanna signed the Information Report she fully believed the farm was joint property. However, shortly after the report was filed, Kent County tax statements were received by Johanna which indicated that the farm was owned solely by Peter Aiello. In the light of the information revealed by the tax statements one of Aiello's sons requested Richard Whiteford, an attorney who represented both the estate and Paramount in the dealings with Hartford, to check the status of the farm ownership. On July 29, 1970, Whiteford received confirmation from an attorney in Kent County that the land records disclosed the farm was owned solely by Peter Aiello on the date of his death. Upon receipt of this information the Aiello family resolved not to tell Hartford of their discovery. This decision was made after a conference with Whiteford in which he advised them that they had no obligation to make such a disclosure. Another attorney, Duncan, who was then representing the estate in the probate proceedings, was instructed by Johanna to delay the filing of a real property inventory although at that time the probate authorities were insisting that this be done.[2]

---

1. Md.Ann.Code, art. 81, § 155 (1957).

2. At the time of Peter Aiello's death such an inventory was required by Md.Ann.Code, art. 93, §§ 251, 253, 254 (1957) (Repealed).

After Hartford had filed its suit, negotiations were initiated with respect to the possible settlement of Hartford's claim against Paramount and the estate. As heretofore stated, both Paramount and the estate were represented by Whiteford and in May of 1971, he made an initial offer of settlement to Hartford in the amount of $5,000.00. Hartford assumed from this low offer that the estate was still insolvent but made no inquiry as to the extent or nature of the assets of the estate. A settlement was finally reached on October 21, 1971, under which Hartford released its claim against Paramount and the estate in consideration of $40,000. This amount was payable $15,000 in cash and a promissory note for the balance of $25,000 signed by Johanna Aiello, individually, as well as Michael and Anthony, two of Peter Aiello's sons. Thereafter, in November of 1971, Whiteford replaced Duncan as attorney in the probate proceedings and filed the real property inventory.[3] The Information Report, however, was not amended.

In accordance with the terms of the settlement note a $15,000 check subsequently was delivered to Hartford, leaving a balance of $10,000 unpaid. In May of 1972, Francis Aiello, another son of Peter Aiello, angered in a dispute with his mother and brothers, informed Hartford that the Kent County farm had been owned solely by Peter Aiello. Hartford immediately checked the Kent County land records and confirmed the fact of such ownership. Hartford then refused to cash the $15,000 check and tendered it, together with a return of the $15,000 cash payment to the Aiellos in exchange for cancellation of the release. This tender was refused by the Aiello family and Hartford then filed its motion asking the court to set the release aside.

In the proceedings below the parties, as well as the court, focused to a substantial degree upon the Information Report filed by Johanna in the probate proceedings and its role in this controversy. The district judge pointed out that at the time she executed the report Johanna fully believed the truth of the statement that the farm was jointly owned, and that such belief was not the result of a reckless disregard for the truth. The court further pointed out that the purpose of the report was to provide information to the state in its tax program and that Hartford's reliance upon the vague and somewhat ambiguous information therein was at its peril. We agree with these observations of the district court and if Hartford's motion to set aside the release rested solely upon the alleged misrepresentations in the Information Report, we would have little difficulty in affirming the order of denial.

■ Our point of departure with the court below, however, is its conclusion that there was no fiduciary duty upon the part of Johanna Aiello as executrix of her husband's estate to disclose to Hartford that the farm was solely owned by the decedent after she became aware of that fact. In reaching this conclusion the district judge was of the opinion that in the settlement negotiations Hartford "did not deal with an executrix but with three individuals—Johanna, Michael and Anthony Aiello—against whom it had no claim," and that the negotiations did not involve the state probate proceedings but litigation in the federal court. In our opinion, however, this attempted bifurcation of Johanna Aiello's role in the Hartford controversy elides the fiduciary obligation resting upon her as executrix.

■■ In Maryland as elsewhere, an executrix acts as a trustee for all persons interested in the estate, including creditors, and she is required to be diligent and faithful in the discharge of her duties. American Jewish Joint Distribution Committee v. Eisenberg, Executor, 194 Md. 203, 70 A.2d 44 (1949); Sullivan v. Doyle, Administratrix, 193 Md. 421, 67 A.2d 246 (1949). While it

3. The inventory disclosed an appraised value on the farm of $121,069.

is true that under Maryland law at the time of Peter Aiello's death his real property was not directly administered by his executrix,[4] nevertheless, it was subject to the payment of the estate's obligation to Hartford and in our opinion Johanna's fiduciary obligation required that she disclose the existence and nature of this asset. The district judge, upon the premise that there was no fiduciary duty to disclose, found no active concealment on Johanna's part and concluded that since she had not impeded any attempt by Hartford to discover the truth there was no causal relationship between her conduct and Hartford's lack of knowledge. He further concluded that there was not sufficient evidence to impute to Johanna knowledge of reliance on the part of Hartford and therefore the required element of scienter was lacking. While we do not accept the court's premise, the evidence casts considerable doubt upon this conclusion with respect to Johanna's state of mind. The bond of secrecy to keep the truth within the family and not disclose it to Hartford, together with the instructions to the attorney representing her as executrix in the probate proceedings to delay filing the real estate inventory until the settlement had been effected, indicates to us that Johanna had a strong suspicion, if not actual knowledge, that Hartford was relying upon the misinformation and demonstrates scienter on her part, if such were required.

Reliance by Hartford upon Johanna's fidelity as executrix, however, was justifiable and inherent in the relationship of the parties. Admittedly, sound business judgment and discretion should have influenced Hartford to conduct a title search of all of Peter Aiello's real property, but while such laxity might leave it remediless in an arm's-length transaction,[5] it did not relieve Johanna of her fiduciary responsibility to make full disclosure to Hartford. The principle here applicable is found in 2 Restatement of Contracts, § 472, P. 896:

> "(1) There is no privilege of non-disclosure, by a party who
>
> \* \* \* \* \* \*
>
> (c) occupies such a relation to the other party as to justify the latter in expecting that his interests will be cared for."

Included in the foregoing is "one who is a trustee, executor, administrator, or the like \* \* \*." *Id.*, Comment c., p. 898.

Continued adherence to the principle of clear and undiluted loyalty and fidelity of a fiduciary to his trust requires the result we reach in this case.

> "Uncompromising rigidity has been the attitude of courts of equity when petitioned to undermine the rule of undivided loyalty by the 'disintegrating erosion' of particular exceptions \* \* \*. Only thus has the level of conduct for fiduciaries been kept at a level higher than that trodden by the crowd." Cardozo, J., Meinhard v.

4. Under Maryland law at the time of Peter Aiello's death real property of a decedent did not go into the estate but passed directly to the heir or devisee. The claims of creditors were paid out of the personal estate which vested in the hands of the executor, and such debts could be satisfied out of the land of a decedent only after a proceeding in equity to subject the land to such debts. *See* Md.Ann.Code, art. 16, § 157 (1957) (Repealed). An interesting and informative review of such procedure under the old Maryland law is found in Judge Chesnut's opinion in Safe Deposit & Trust Co. of Baltimore v. Tait, 54 F.2d 387 (D.C.Md.1931). Shortly after Aiello's death Maryland adopted a recodification of its testamentary law, the purpose of which was to eliminate certain provisions of the old law which "are archiac, often meaningless under modern procedures and no longer useful." Md.Ann. Code, art. 93, § 1–105(a). Under the recodification there is now little distinction between real and personal property in the administration of estates. See generally, Stiller and Redden, Statutory Reform in the Administration of Estates of Maryland Decedents, Minors and Incompetents, 29 Md.L.Rev. 85 (1969).

5. *See* The Savings Banks Retirement System v. Clarke, Trustee, 258 Md. 501, 265 A.2d 921 (1970) ; *Cf.* McCormick & Company, Incorporated v. Childers, 468 F.2d 757 (4 Cir. 1972).

Salmon, 249 N.Y. 458, 164 N.E. 545, 546 (N.Y.1928).

The order appealed from is reversed and this proceeding is remanded to the district court with instructions to set aside the subject release and reinstate Hartford's original claim.

Remanded with instructions.