ESTATE OF DAVID N. MARINE, DECEASED, WILLIAM H. PRICE, II AND ALICE B. NILY, PERSONAL REPRESENTATIVES, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 26928-88.          Filed September 23, 1991.

---

*James R. O'Neill, Theodore L. Press,* and *Jeffrey B. Maletta,* for the petitioner.

*Sandra M. Gilmore,* for the respondent.

WELLS, *Judge:* Respondent determined a deficiency in petitioner's Federal estate tax liability of $790,918.29. After concessions, the issue for our decision is whether petitioner is entitled to deduct the value of a testamentary bequest to charitable beneficiaries under section 2055(a).[1]

FINDINGS OF FACT

Some of the facts have been stipulated for trial pursuant to Rule 91. The stipulations are adopted by this reference. At the time the petition in the instant case was filed, William H. Price II, one of petitioner's personal representatives, maintained a business address in Easton, Maryland.

Petitioner is the Estate of David N. Marine, deceased. David N. Marine, M.D., died in 1984, in Oxford, Maryland, from cirrhosis of the liver caused by years of chronic and habitual alcoholism. During his lifetime, Dr. Marine had been a practicing physician. He obtained his undergraduate degree at Princeton University. He later attended and graduated from the School of Medicine at Johns Hopkins University. He served in the military and then practiced in a staff position at the Loch Raven Veterans' Hospital in Baltimore. Eventually, he became chief of medicine at that hospital. He also held a faculty position at Johns Hopkins.

Dr. Marine retired from the practice of medicine with the Veterans' Administration in 1970 and moved to Oxford,

[1]Unless otherwise indicated, all section and Code references are to the Internal Revenue Code of 1954 as amended and in effect as of the date of decedent's death, and all Rule references are to the Tax Court Rules of Practice and Procedure.

Maryland. He was 46 years old. At the time of his retirement, Dr. Marine's alcoholism was causing progressive physical and mental deterioration. He nevertheless had lucid periods and was aware of his condition and what his alcoholism might do to him.

As his condition deteriorated, Dr. Marine retained a few close friends, one of whom was Dr. Johannes Bartels, a physician who had been a classmate of Dr. Marine's at Johns Hopkins. Dr. Marine's real estate broker, Alice B. Nily, was another close friend. Subsequently, Alice B. Nily became one of petitioner's personal representatives. Dr. Marine stated to Dr. Bartels and to Mrs. Nily that, if he died unmarried, he wished half his money to go to Princeton and the other half to Johns Hopkins.

Dr. Marine received a substantial inheritance in 1976. Dr. Bartels became concerned about Dr. Marine's condition and whether it was interfering with his ability to handle his affairs, especially his newly acquired inheritance. With Dr. Marine's grudging concurrence, Dr. Bartels instituted a guardianship proceeding in 1977. That proceeding resulted in the appointment of Dr. Bartels and Mr. Waller S. Hairston, Dr. Marine's personal attorney, as coguardians of Dr. Marine's property and financial affairs. When Mr. Hairston resigned from the guardianship in 1977, William H. Price II, Mr. Hairston's partner, took Mr. Hairston's place as coguardian. Mr. Price subsequently became one of petitioner's personal representatives.

Dr. Marine executed a last will and testament on May 9, 1981 (the will). The dispositive "items" of the will are as follows:

FOURTH: If at the time of my death I own the real estate and improvements whereon I now reside, containing approximately 4.42 acres, and being the same property conveyed to me by J. Edward Ross and wife by deed dated November 25, 1969, and recorded among the Land Records of Talbot County in Liber No. 440, folio 250, I devise such property to ORIEL HOBBS VAZIFDAR, of Baltimore, Maryland, provided she survives me for thirty (30) days. If she does not so survive me, this devise shall be null and void, and I direct my Personal Representatives to sell such real estate pursuant to their general powers hereinafter set forth, the net proceeds thereof becoming a part of the residue of my estate.

FIFTH: To my good friend, ALICE B. NILY, of Easton, Maryland, I give the sum of Fifty Thousand Dollars ($50,000.00), provided she

survives me for thirty (30) days. If she does not so survive me, this bequest shall be void, and the gift shall become a part of the residue of my estate.

SIXTH: I inherited from my father, Dr. David Marine, a valuable archaeological collection which is on loan to the State of Delaware, Division of Historical and Cultural Affairs, and currently stored at the Inland Field Archaeological Museum and Research Center, South Bowers, Delaware. I hereby give such collection to the STATE OF DELAWARE, DIVISION OF HISTORICAL AND CULTURAL AFFAIRS, absolutely.

SEVENTH: I also inherited from my father a collection of papers and other memorabilia which are on loan to the University Hospitals of Cleveland, and currently at the Hospital's Archives at Lowman House, 2065 Adelbert Road, Cleveland, Ohio. I give this collection to UNIVERSITY HOSPITALS OF CLEVELAND, absolutely.

EIGHTH: In recognition of her untiring and valuable services to me, I give to MARY ANN WHITBY, the sum of Five Thousand Dollars ($5,000.00), provided she survives me for thirty (30) days. If she does not so survive me, then this bequest shall become a part of the residue of my estate.

NINTH: I give to EPWORTH UNITED EPISCOPAL CHURCH, Baltimore Avenue, Rehoboth, Delaware, the sum of Eighty Thousand Dollars ($80,000.00) in memory of my parents, to be used for the general purposes of the church as its proper officials may decide.

TENTH: I give and devise all the rest, residue and remainder of my estate, of whatsoever nature and wheresoever situate, including all property over which I may hold a power of appointment, in equal shares, unto PRINCETON UNIVERSITY, Princeton, New Jersey, to be used for its general corporate purposes, and to the JOHNS HOPKINS UNIVERSITY, a body corporate of the State of Maryland, to be used for the general support of its medical school.

When he signed the will, Dr. Marine crossed out the bequest contained in the ninth clause.

After Dr. Marine executed the will, his housekeeper, Mrs. Whitby, received an offer of a more lucrative position. Dr. Marine's guardians matched that offer in order to keep the housekeeper working for Dr. Marine. Dr. Marine, however, became concerned that Mrs. Whitby would leave his employment. He desired to reward Mrs. Whitby's loyalty if she stayed, and to eliminate her from his will if she did not. In ensuing conversations with Dr. Bartels, Dr. Marine indicated that he also wished to reward others who subsequently might benefit him. Dr. Marine wished to avoid a situation which had occurred following his father's death. At the death of Dr. Marine's father, a household employee, feeling slighted at being omitted from the father's will,

allegedly took certain property from the father's estate without permission. To avoid such a possibility, Dr. Marine and Dr. Bartels came up with alternative language to the bequest to Mrs. Whitby. Mr. Price prepared a codicil to the will (the codicil) and incorporated the alternative language into the codicil. The codicil was executed on August 21, 1982, and provided as follows:

FIRST: I delete Item EIGHTH of my Will [the bequest of $5,000 to the housekeeper Mary Ann Whitby] and substitute a new Item EIGHTH as follows:

EIGHTH: I empower my Personal Representatives, in their sole and absolute discretion, to compensate persons who have contributed to my well-being or who have been otherwise helpful to me during my lifetime by allocating to each of them such items of tangible personal property, or by transferring securities, or by giving them cash, or any combination of tangible personal property, securities or cash, as my Personal Representatives determine is a fair bequest for services rendered. My Personal Representatives shall take into account the length and nature of such services and the spirit with which such services were rendered on my behalf throughout the period of such contribution to my well-being. No single bequest, however, shall exceed one percent (1%) of my gross probate estate, but may be considerably less. The decision of my Personal Representatives as to both the amount of a bequest and what it shall consist of shall be final.

SECOND: In all other respects not inconsistent herewith, I do hereby ratify and confirm and republish my said Last Will and Testament dated May 9, 1981. I also confirm that when I signed my Will, I deleted the bequest to Epworth United Episcopal Church contained in Item NINTH.

Dr. Marine died on November 14, 1984. The next day, the personal representatives, Mr. Price and Mrs. Nily, filed the will and codicil for probate with the Orphans' Court for Talbot County, Maryland. The Orphans' Court admitted the will and the codicil to probate. On November 15 or 16, 1984, Mrs. Nily and Mr. Price met to discuss the various persons who had been helpful to Dr. Marine and who thus might be potential beneficiaries under the codicil. They considered and rejected making a distribution to a former housekeeper or to a neighbor who had visited Dr. Marine and shared an interest in gardening. They also rejected making distributions to a physician and his wife who had moved nearby and kept in touch with Dr. Marine, because giving them some money "would have been an embarrassment to them." Additionally, they considered making distributions to them-

selves and to Mr. Hairston, Dr. Marine's former attorney and guardian, but they quickly rejected that notion on the grounds of conflict of interest.

At that meeting, the personal representatives decided that two individuals should receive distributions under the codicil. They decided that Mrs. Whitby should receive $10,000 and that Dr. Bartels should receive $15,000. The personal representatives felt that, although Dr. Bartels had been compensated for his services as guardian, he deserved more, in view of his services to Dr. Marine.

The personal representatives filed a list of "Interested Persons" in the Orphans' Court on November 16, 1984. The list included all of the legatees under the will and codicil, including the discretionary distributees, Mrs. Whitby and Dr. Bartels. With respect to the discretionary distributees under the codicil, the list stated: "If others are to be included, names and addresses will be supplied."

The list of interested persons included Dr. Marine's cousins, who were listed as "heirs-at-law." The personal representatives sent a copy of the list of interested persons to all listed beneficiaries on December 6, 1984; no one objected to the proposed distributions.

On July 23, 1985, on behalf of petitioner, the personal representatives filed Internal Revenue Service Form 706, Federal Estate Tax Return. The return reflected a gross estate in the amount of $2,594,455.49. The return reflected a deduction of $2,105,081.12 as the amount of the residuary bequest to Princeton and to Johns Hopkins.

Petitioner filed the "First Account of Administration and Distribution" (the accounting) with the Orphans' Court on August 20, 1985. The accounting set forth the distributions to be made under the will and the codicil, including the bequest of the residue. The accounting showed Princeton and Johns Hopkins each receiving $688,351.21 from the residue. The accounting listed only Mrs. Whitby, who was to receive $10,000, and Dr. Bartels, who was to receive $15,000, as beneficiaries under the codicil. The accounting, however, included neither the specific provision, set forth in the earlier "Notice to Interested Parties," that others might be added to the list of beneficiaries under the codicil, nor any statement that the personal representatives would not

exercise their discretion any further. The accounting reflected that the personal representatives retained cash and note reserves of $1 million.[2] The next month, the personal representatives distributed the discretionary bequests to Dr. Bartels and Mrs. Whitby and made a partial distribution of the residuary in the amounts set forth in the first accounting.

Soon after July 21, 1987, the personal representatives received an examination report from respondent, in which respondent placed in issue the deductibility of the residuary bequest to Princeton and Johns Hopkins. To address concerns raised by respondent's examination report, on September 29, 1987, the personal representatives filed a petition with the Orphans' Court seeking approval of the distributions made under the codicil.

On that date, the Orphans' Court approved the distributions that had been made under the codicil. It further ordered that no further distributions under the codicil would be permitted.

## OPINION

The issue we must decide is whether petitioner is entitled to deduct the residuary bequests to Johns Hopkins and Princeton as charitable bequests. Section 2055(a) allows a deduction from a decedent's gross estate in the amount of "all bequests, legacies, devises, or transfers * * * to or for the use of any corporation organized and operated exclusively for religious, charitable, scientific, literary or educational purposes."[3] That section carries out the public policy favoring charitable giving. *Estate of Burdick v. Commissioner*, 96 T.C. 168 (1991).

In the instant case, Dr. Marine left his residuary estate to Princeton University and to the Johns Hopkins University for the general support of its medical school. There is no

---

[2]Petitioner advises that the full amount of the residuary has not yet been paid to Princeton or Johns Hopkins because of respondent's determination that petitioner is liable for a deficiency in Federal estate taxes in the amount in issue in the instant case, i.e. $790,918.29.

[3]We note at the outset that Congress, in 1969, imposed considerable restrictions upon the deduction, for estate tax purposes, of charitable contributions. See sec. 2055(e), as amended by the Tax Reform Act of 1969, Pub. L. 91-172, sec. 201(d)(1), 83 Stat. 487, 554. The parties have not addressed the issues of the instant case in terms of sec. 2055(e), or its accompanying regulations, "applicable to decedents dying after December 31, 1969." Accordingly, we do not decide whether sec. 2055(e) applies to the instant case.

dispute that both are organizations "organized and operated exclusively for religious, charitable, scientific, literary or educational purposes" within the meaning of section 2055(a).

The deductibility of an estate-tax charitable contribution[4] hinges upon whether the amount the charity will receive is ascertainable at the decedent's date of death. Congress did not intend "that a deduction should be made for a contingency the actual value of which cannot be determined from any known data." *Humes v. United States,* 276 U.S. 487, 494 (1928). Instead, the amount of the transfer to charity must be "fixed in fact and capable of being stated in definite terms of money." *Ithaca Trust Co. v. United States,* 279 U.S. 151, 154 (1929); *Henslee v. Union Planters Bank,* 335 U.S. 595 (1949). The time when the charitable bequest must be definitely ascertainable is the date of the testator's death.

The estate so far as may be is settled as of the date of the testator's death. The tax is on the act of the testator [and] not on the receipt of property by the legatees. Therefore the value of the thing to be taxed must be estimated as of the time when the act is done. * * * [*Ithaca Trust Co. v. United States,* 279 U.S. at 155. [5] Fn. refs. omitted.]

The Supreme Court also stated in *Commissioner v. Estate of Sternberger,* 348 U.S. 187, 199 (1955):

This Court finds no statutory authority for the deduction from a gross estate of any percentage of a *conditional* bequest to charity where there is no assurance that charity will receive the bequest or some determinable part of it. Where the amount of a bequest to charity has not been determinable, the deduction has properly been denied. *Henslee v. Union Planters Bank,* 335 U.S. 595, 598-600; *Merchants Bank v. Commissioner,* 320 U.S. 256, 259-63; and see *Robinette v. Helvering,* 318 U.S. 184, 189. [Emphasis supplied.]

In *Burdick v. Commissioner,* 117 F.2d 972 (2d Cir. 1941), affg. *Nicholas v. Commissioner,* 40 B.T.A. 1040 (1939), the testator had bequeathed $400,000 to an educational founda-

---

[4] We have referred to the amounts involved as "charitable" contributions, deductions, bequests, etc., although, as noted, sec. 2055(a) permits deductions of amounts transferred for other purposes as well.

[5] In *Ithaca Trust Co. v. United States,* 279 U.S. 151 (1929), the Supreme Court noted that its holding "is not changed by the necessary exceptions to the general rule specifically made by the Act." *Ithaca Trust Co. v. United States, supra* at 155. The Code makes specific exceptions to the date-of-death valuation, such as the allowance of an alternate valuation date in sec. 2032, and the provisions for funeral and administrative expenses in sec. 2053(a)(1) and (2).

tion to be selected by his sister and his nephew. If the testator's sister and nephew did not select such a foundation within the year following the probate of the testator's will, the $400,000 was to become part of the residuary estate, to the benefit of "mostly nephews" of the decedent. 40 B.T.A. at 1042. The sister and nephew selected a qualifying institution within the time specified, and it received the $400,000. The Board of Tax Appeals denied the estate's claimed charitable deduction of such amount. In affirming the board, the Second Circuit stated:

When the bequest, though charitable, is at the time of death contingent and uncertain ever to take effect no deduction may be allowed. * * *

Here the testator made the effectiveness of the bequests wholly dependent upon action to be taken by two persons under a power they were free to exercise or not. * * * It was, therefore, impossible to determine whether the bequests would by the terms of his will become a part of his residuary estate. This made their character too uncertain to make them deductible * * * .

[117 F.2d at 974.]

The Seventh Circuit addressed a similar situation in *Knoernschild v. Commissioner*, 97 F.2d 213 (7th Cir. 1938), affg. 35 B.T.A. 886 (1937). There the testator left equal shares of property to each of his six children. In the case of one of his children, however, "Marie, who is now in the Sisterhood and who is known by the name of Sister Mary Virginita," her share was to "be paid * * * to the Holy Angels Academy." The testator further provided, however, that—

it shall be the privilege of my daughter Marie to direct said trustees to pay from said fund any part of the income or principal as my daughter may in her judgment see fit for the purpose of providing for her mother or any of her brothers or sisters in case they are in need of financial assistance. [*Knoernschild v. Commissioner*, 97 F.2d at 214.]

Between the testator's death and the trial of the case, the trustees paid substantial amounts to the Holy Angels Academy. The Holy Angels Academy was a Catholic religious and educational institution, gifts to which were deductible in computing the estate tax. The Board of Tax Appeals disallowed the estate's claimed charitable deduction, and the Seventh Circuit affirmed. The Seventh Circuit

found dispositive the fact that Sister Mary Virginita could divert funds from Holy Angels Academy to members of her family if they were "in need of financial assistance." It reasoned that such a right was "so broad as to make possible the entire destruction of the corpus of the estate passing to the Academy." It therefore held that—

Inasmuch as the decedent made no absolute bequest to the Academy but rather gave to it the corpus of the estate with the provision that the fund might be entirely diverted, the character from which exemption emanates was non-existent. The decision of the Board is affirmed. [*Knoernschild v. Commissioner*, 97 F.2d at 215.]

The Seventh Circuit, in *Knoernschild*, relied upon *Mississippi Valley Trust Co. v. Commissioner*, 72 F.2d 197 (8th Cir. 1934). In *Mississippi Valley Trust*, the testator noted in his will that he had "expressed to my sons my wishes as to certain charitable gifts." He then gave his sons the power to make charitable gifts from his estate "within their sole discretion as shall seem to them to be best." 72 F.2d at 198. The sons gave $1 million from their father's estate to a qualified university. The Eighth Circuit denied the estate's claimed charitable deduction. It observed that a valid charitable deduction requires—

that the provision by the testator must be one that is definite in ascertainment and that is legally enforceable; that it must possess the qualities of a definite command which will define the legal rights of all parties to the property intended to be affected. [*Mississippi Valley Trust Co. v. Commissioner*, 72 F.2d at 199.]

The court held that the charitable bequest in issue failed to meet such requirements.

Similarly, in *Delbridge v. United States*, 89 F. Supp. 845, 846 (E.D. Mich. 1950), the testator directed her trustee to make payments of up to $1,000 to "such charitable, civic enterprises, educational and religious enterprises as my said Trustee shall designate." From the first payment of $1,000, however, the trustee could make "payments to such of my household employees, chauffeurs, or other personal employees or persons whom, from my Trustee's intimate connection with my affairs, he believes I would be interested in remembering." The trust was to terminate when the trustee died, whereupon any undistributed amounts were to be

"paid out * * * in the same proportion and to the same persons as shall have received or should have received the last preceding payment or distribution." In the 7 years following decedent's death, the trustee distributed "various sums of money to charities and certain individuals." *Delbridge v. United States*, 89 F. Supp. at 846. The court denied the estate's claimed deduction of the amounts distributed to charities, finding that an indeterminate amount of the first payment could have been directed to individuals, not charities. The court noted that, had the trustee died before the next distribution, the entire corpus could have been shared by those individuals, to the exclusion of the charities. The court stated (89 F. Supp. at 847):

There can be no conditions or strings attached which might defeat the right of a qualified beneficiary to demand or receive the bequest. Where the amount of the charitable bequest is uncertain or conjectural, or where discretion granted by the testator to the Trustee is not limited by a fixed standard, but is so uncertain that it cannot be stated in definite terms of money, no deduction may be allowed. * * *

As in the foregoing cases, in the instant case, we hold that the value of the charitable bequest was not ascertainable at the time of Dr. Marine's death. We rest our conclusion on a number of considerations.

The specific language of Dr. Marine's codicil gives the personal representatives "sole and absolute" discretion to select and reward persons who contributed to Dr. Marine's "well-being" or who had "been otherwise helpful" to him during his lifetime. Dr. Marine's codicil did not limit the number of such potential beneficiaries, each of whom could receive up to 1 percent of his gross probate estate under the codicil. At the time of Dr. Marine's death, the exercise of that discretion in favor of discretionary beneficiaries conceivably could have consumed the entire residuary interest that otherwise would have gone to Princeton or Johns Hopkins. Dr. Marine limited each potential discretionary bequest under the codicil to 1 percent of his gross probate estate, but he also directed debts, taxes, and a number of specific bequests would be paid first. Thus, only the amount remaining after those payments was available for distribution to potential beneficiaries under the codicil. Consequently, at the time of Dr. Marine's death, the potential

existed for the personal representatives to exercise their discretion in the maximum amount—i.e., of 1 percent of the *gross* estate—in favor of considerably fewer than 100 beneficiaries under the codicil and thereby consume the entire residue of the estate. In effect, Dr. Marine empowered his personal representatives to decide whether his entire estate should be given to private interests or to the specified charities. We think such a power is too broad and too uncertain to qualify an interest that is subject to the exercise of such power for the estate tax charitable deduction.

We also consider the fact that the language of Dr. Marine's will did not give the charitable beneficiaries any legal right at the time of Dr. Marine's death to demand payment of any amount from the estate that was "fixed in fact and capable of being stated in definite terms of money," *Ithaca Trust Co. v. United States,* 279 U.S. 151, 154 (1929), because the codicil did not limit the number of beneficiaries to whom the personal representatives could divert Dr. Marine's estate.

Petitioner points to instances where the courts have allowed the deduction of a charitable bequest, despite the possibility that the bequest could be diverted from charity after the decedent's death. Petitioner's principal reliance is upon two cases, *Longue Vue Foundation v. Commissioner,* 90 T.C. 150 (1988), and *Estate of Harvey v. United States,* 678 F. Supp. 1268 (E.D. La. 1988), which specifically adopted our reasoning in *Longue Vue.*[6] Both of those cases upheld the claimed charitable deduction because the possibility that a specific charitable bequest would be defeated by a subsequent exercise of the "forced heir's" legitimate interest under Louisiana law was only "negligible."

*Longue Vue* and *Estate of Harvey,* however, are distinguishable from the instant case. In those cases, the value of

---

[6]Petitioner also cites Rev. Rul. 83-20, 1983-1 C.B. 231, wherein respondent allowed the deduction of a residuary bequest to charity, despite the fact that the testator's widow elected, under State law, to claim a "widow's allowance" from the residue during the period of the estate's administration. In the facts set forth in that ruling, the deductible amount, i.e., the value of the residue less the amount of the widow's allowance, was presently ascertainable at the testator's date of death. Moreover, in the facts of that ruling, any uncertainty as to the amount going to charity arose not from the terms of the will, but solely from operation of State law. As we show, *infra,* those factors do not apply to the instant case. Cf. sec. 20.2055-2(e)(1)(i), *Example 6,* Estate Tax Regs.

the charitable bequest was ascertainable from the language of the testators' wills; the testators did not make the bequests to the charities subject to any discretion. Instead, the possibility of diversion arose from the operation of State law, a distinction the courts have long observed. See, for example, *Delaney v. Gardner,* 204 F.2d 855, 859 (1st Cir. 1953):

> Thus, the pertinent determinations indicate that a charitable deduction should not be disallowed because of a condition attached by operation of law, whereas it may be disallowed when the testator himself makes the charitable gift conditional. * * * [Citations omitted.]

Indeed, in *Longue Vue,* we relied upon authorities which stressed that a charitable bequest is deductible when the uncertainty as to the date of death value of the charitable bequest was not one caused by the testator. See *Humphrey v. Millard,* 79 F.2d 107, 108 (2d Cir. 1935) ("But here no uncertainty existed at the time decedent died which was inherent in the language of his will."), cited in *Longue Vue Foundation v. Commissioner,* 90 T.C. at 157; *Commissioner v. First National Bank of Atlanta,* 102 F.2d 129, 131 (5th Cir. 1939) ("The definiteness and certainty of bequests, required by the Federal statutes, is as to the intent of the testator as manifested by the terms of his will."), also cited in *Longue Vue Foundation v. Commissioner, supra* at 158. By contrast, in the instant case, the terms of Dr. Marine's codicil created the uncertainty at the date of his death.

Petitioner is not aided by two other cases cited in its brief, *Oetting v. United States,* 712 F.2d 358 (8th Cir. 1983), and *Estate of Thomas v. Commissioner,* T.C. Memo. 1988-295.[7]

Both *Oetting* and *Estate of Thomas* were decided under principles of section 2055(e). In *Oetting,* the Eighth Circuit allowed a deduction for a charitable bequest after the executors had obtained a court-ordered post-death severance of the charitable interest from the property bequeathed to private interests. In *Oetting* the charitable bequest was

---

[7]In *Estate of Thomas v. Commissioner,* T.C. Memo. 1988-295, we followed the precedent established by the Eighth Circuit in *Oetting v. United States,* 712 F.2d 358 (8th Cir. 1983), as required by *Golsen v. Commissioner,* 54 T.C. 742, 756-757 (1970), affd. 445 F.2d 985 (10th Cir. 1971), cert. denied 404 U.S. 940 (1971).

four-fifths of the remainder of a trust following the expiration of three life income interests. In *Estate of Thomas,* the charitable bequest was a one-third income interest in a producing farm for a period of 50 years. Unlike the instant case, the charitable interests in *Oetting* and *Estate of Thomas* were ascertainable at the decedent's date of death, as they were capable of being expressed in "definite terms of money." In neither case did the decedent subject the amount of the charitable contribution to the discretion of the executors.

Petitioner also points to extrinsic evidence introduced at trial to show that the value of the residuary estate was ascertainable at the time of Dr. Marine's death. We received such evidence, not to contradict or vary the terms of the will and codicil, rather to explain the circumstances of their execution and how they were to be carried out. *Estate of Holtz v. Commissioner,* 38 T.C. 37, 41 (1962). Such evidence forms the basis for some of our findings of fact set forth above. That evidence, however, does not establish the value of the residue at the time of Dr. Marine's death. That evidence, insofar as it pertains to Dr. Marine's intent before he died, shows that he wished to make gifts to Princeton and to Johns Hopkins; it does not prove the specific value of those gifts, as of the date of Dr. Marine's death. Dr. Marine modified his will to change a single specific bequest that he had made to his housekeeper, Mary Ann Whitby, to an indeterminate number of discretionary bequests, of an indeterminate total value.[8] After the change, reliable predictions of the number of beneficiaries under the codicil, of the amount of any particular award, and of the total amount to be awarded under the codicil were not possible. Accordingly, at the time of Dr. Marine's death, the resulting value of the residuary estate could not be calculated in "definite terms of money." As stated by the Supreme Court in *Merchants National Bank v. Commissioner,* 320 U.S. 256, 262-263 (1943):

Congress has required a more reliable measure of possible expenditures and present value than is now available for computing what the charity will receive. That salient fact is that the purposes for which the * * *

---

[8]Notwithstanding Dr. Marine's serious and chronic alcoholism, the parties have not contested his competency to make the will and codicil at issue.

[personal representatives] could, and might wish to have the funds spent do not lend themselves to reliable prediction. This is not "a standard fixed in fact and capable of being stated in definite terms of money." Cf. *Ithaca Trust Co. v. United States, supra.* * * * [Fn. ref. omitted.]

We are mindful that Dr. Marine had confidence in his personal representatives to carry out his intentions, but that was also true of the testators in *Burdick v. Commissioner,* 117 F.2d 972 (2d Cir. 1941); *Knoernschild v. Commissioner,* 97 F.2d 213 (7th Cir. 1938); *Mississippi Valley Trust Co. v. Commissioner,* 72 F.2d 197 (8th Cir. 1934); *Delbridge v. United States,* 89 F. Supp. 845 (E.D. Mich. 1950). In each of those cases, the deduction was disallowed because the testator, in subjecting the charitable bequest to discretion, had failed to create a charitable bequest that was "definite in ascertainment and that is legally enforceable." *Mississippi Valley Trust Co. v. Commissioner, supra* at 199.

Petitioner argues that evidence of events which took place after Dr. Marine's death is helpful "in establishing or clarifying the circumstances as they existed at the time of testator's death." *Lincoln Rochester Trust Co. v. McGowan,* 217 F.2d 287, 293 (2d Cir. 1954). We disagree. If anything, events occurring after Dr. Marine died underscore the indeterminate nature of his residuary estate. Dr. Marine gave his personal representatives discretion which was not subject to any "ascertainable standard." *Newton Trust Co. v. Commissioner,* 160 F.2d 175, 178 (1st Cir. 1947), affg. 5 T.C. 1304 (1945). In their discretion, the personal representatives doubled Dr. Marine's original award to the housekeeper, Mary Ann Whitby, from $5,000, to $10,000. In their discretion, the personal representatives gave $15,000 to Dr. Bartels, whom Dr. Marine did not include in the original will, notwithstanding Dr. Marine's lifelong friendship with Dr. Bartels. In their discretion, the personal representatives considered, and rejected, a variety of Dr. Marine's friends and acquaintances, sometimes failing to exercise such discretion because the receipt of a distribution under the codicil would have been "embarrassing." We also consider the fact that, in an accounting filed the day after Dr. Marine's death, the personal representatives stated, as to the beneficiaries under the codicil, "If others are to be included, names and addresses will be supplied." Such

possibility of further bequests under the codicil would subject the residue to further possible diminution.

Petitioner argues that because the personal representatives obtained an Orphans' Court order affirming and closing the class of beneficiaries under the codicil, only Mrs. Whitby and Dr. Bartels, the original two beneficiaries named by the personal representatives, would have a right to receive awards under the codicil, thereby curing any uncertainty that existed at the time of Dr. Marine's death. We find significant, however, the fact that the personal representatives obtained that order only after respondent questioned the deductibility of the charitable bequest. In our view, the issuance of that order did not change the indeterminate nature of the bequests at the time Dr. Marine died, more than 2 years before the order was obtained.

We have examined the pertinent Maryland law to ascertain whether it would have restricted the actions of the personal representatives sufficiently to force any amount to be given to the charities beyond what would be left after the personal representatives exercised their discretion. When Dr. Marine died, Maryland law required personal representatives to exercise their duties fairly, honestly, and expeditiously; it did not impose a duty upon the personal representatives in the instant case to limit the exercise of their discretion to a specific number of beneficiaries under the codicil, or to limit the total amount to be given to such beneficiaries. Dr. Marine conferred so much discretion upon his personal representatives that we are compelled to conclude that there was no way to ascertain, on the date of Dr. Marine's death, the amount that would go to potential beneficiaries under the codicil and how much residue would be left for Princeton and Johns Hopkins. See Md. Est. & Trusts Code Ann. sec. 7-101 (1974); *American Jewish Joint Distribution Committee v. Eisenberg,* 194 Md. 203, 204, 70 A. 2d 44, 45 (1949). See also *Hartford Accident & Indemnity Co. v. Aiello,* 497 F.2d 257, 260 (4th Cir. 1974).

Petitioner also seeks to avoid the applicability of the regulations governing the estate's deduction of charitable contributions. Sec. 20.2055-2(a) and (b), Estate Tax Regs.[9]

---

[9]Sec. 20.2055-2(a) and (b), Estate Tax Regs., provides:

Transfers not exclusively for charitable purposes—

Petitioner argues that it escapes the language of the regulations because the residuary estate is not "property transferred for both a charitable and a private purpose" within the meaning of section 20.2055-2(a), Estate Tax Regs. Petitioner further points out that these regulations fail to include "personal representatives" or "executors" in the specified class of those who might divert the property from charity, within the scope of section 20.2055-2(b), Estate Tax Regs. Accordingly, petitioner argues that the power of the personal representatives in the instant case to divert the property from the charitable residue does not preclude the deduction. We need not decide that question, because the requirement of a "presently ascertainable" value is not confined to circumstances addressed in the regulations. To the contrary, the Supreme Court has stated that Congress did not intend that a deduction should be made for *any* charitable "contingent gift" made by the testator, "the actual value of which cannot be determined from any known data." *Humes v. United States,* 276 U.S. 487, 494 (1928). See also *Merchants National Bank v. Commissioner,* 320 U.S. 256, 262-263 (1943); *Knoernschild v. Commissioner,* 97 F.2d 213 (7th Cir. 1938) (Court denied a deduction to a charitable bequest when individual who was not a "legatee, devisee, donee or trustee" had a power to cause the executors to divert the charitable bequest from charitable beneficiaries to private individuals).

We also consider the fact that Congress specified a means to remove a tainted power and thereby secure the deduction. Under section 2055(a), the termination of a power to consume, invade, or appropriate the amount bequeathed to charity before the power is exercised, and before the time for filing the estate tax return, operates as a "disclaimer." In such circumstances, the provisions of section 2055(a), coupled with the disclaimer provisions of section 2518,

(a) Remainders and similar interests. If a trust is created or property is transferred for both a charitable and a private purpose, deduction may be taken of the value of the charitable beneficial interest only insofar as that interest is presently ascertainable, and hence severable from the noncharitable interest. * * *

(b) Transfers subject to a condition or power. * * * If the legatee, devisee, donee, or trustee is empowered to divert the property or fund, in whole or in part, to a use or purpose which would have rendered it, to the extent that it is subject to such power, not deductible had it been directly so bequeathed, devised, or given by the decedent, the deduction will be limited to that portion, if any, of the property or fund which is exempt from an exercise of the power.

operate to treat the tainted power as if it had not existed. See *Merchants National Bank v. United States,* 583 F.2d 19 (1st Cir. 1978). In the instant case, the personal representatives have not complied with such provisions of section 2055(a). Petitioner's belated attempt to obtain a deduction by obtaining the Orphans' Court order does not remove the taint, after the estate tax return has been filed and the Internal Revenue Service has audited the return and disallowed the deduction. "Tempting as it is to correct uncertain probabilities by the now certain fact, we are of opinion that it cannot be done." *Ithaca Trust Co. v. United States,* 279 U.S. at 155.[10]

To reflect the foregoing,

*Decision will be entered for the respondent.*

---

[10]Petitioner has filed a "Supplemental Brief" in which it calls our attention to *Estate of Johnson v. United States,* 742 F. Supp. 940 (S.D. Miss. 1990). We have considered *Estate of Johnson* and find it not controlling as to the issues in the instant case. We note that subsequent to the filing of the Supplemental Brief, the Fifth Circuit reversed the District Court. *Estate of Johnson v. United States,* 941 F.2d 1318 (5th Cir., Sept. 19, 1991).