121 T.C. No. 4

UNITED STATES TAX COURT

ESTATE OF LEONA ENGELMAN, DECEASED, PEGGY D. MATTSON, EXECUTOR,
Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 4668-02.                    Filed July 24, 2003.

     In 1990, H and D, husband and wife, established a
living trust.  The terms of the trust provided for an
allocation of trust assets between two separate trusts,
Trust A and Trust B, upon the death of the first
spouse.  Initially, all assets were to be placed in
Trust A except to the extent disclaimed by the
surviving spouse.  Disclaimed assets were to be placed
in Trust B.  The surviving spouse was also granted a
power of appointment effective at death over Trust A.

     H died on Dec. 30, 1997.  On Feb. 5, 1998, D
executed a document entitled "Power of Appointment"
directing disposition of the Trust A corpus.  D died on
Mar. 6, 1998.  Thereafter, on May 11, 1998, the special
administrator of her estate executed a "Disclaimer" of
D's interest in Trust A assets valued at approximately
$600,000 as of H's earlier death.  Those assets were
placed in Trust B and distributed to the beneficiaries
thereof.

     <u>Held</u>:  Trust assets worth approximately $617,317 at D's date of death are includable in the gross estate on account of absence of a disclaimer qualified within the meaning of sec. 2518, I.R.C.

     <u>Held</u>, <u>further</u>, no charitable deduction is allowable with respect to distributions to the American Cancer Society, Yale University School of Law, or the State of Israel.

<u>Richard V. Vermazen</u>, for petitioner.

<u>Christine V. Olsen</u>, for respondent.

OPINION

WHERRY, <u>Judge</u>:  Respondent determined a Federal estate tax deficiency of $356,211 for the Estate of Leona Engelman (the estate).  After concessions, the issues for decision are:

(1) Whether a qualified disclaimer within the meaning of section 2518 was made with respect to trust assets worth approximately $617,317 at the date of death of Leona Engelman (decedent); and

(2) whether, to the extent that the foregoing trust assets are included in the gross estate, the estate is entitled to a charitable deduction for certain amounts distributed.

Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the date of decedent's death, and all Rule references are to the Tax Court Rules of Practice and Procedure.

Background

This case was submitted fully stipulated pursuant to Rule 122, and the facts are so found. The stipulations of the parties, with accompanying exhibits, are incorporated herein by this reference. Decedent was a resident of California when she died testate in that State on March 6, 1998. No probate proceeding was maintained on behalf of the estate. The executor and special administrator of decedent's estate, Peggy D. Mattson (Ms. Mattson), resided in California at the time the petition in this case was filed.

Decedent and Samuel Engelman (Mr. Engelman) were husband and wife. On January 10, 1990, in California, they executed a declaration of trust placing their assets into the Engelman Living Trust. The instrument named the settlors, decedent and Mr. Engelman, as the initial trustees of the trust and set forth provisions regarding administration and disposition of the trust estate.

The trust declaration provided generally that, while both settlors were alive, the trustees were to distribute income or principal as the settlors directed. Upon the death of the first spouse, the following provisions were to take effect:

> 2. DEATH OF FIRST SETTLOR. Upon the death of one of the SETTLORS, survived by the other, the TRUSTEES shall divide the Trust Estate into two separate trusts. These separate trusts will be referred to as: TRUST "A" and TRUST "B". Although it is intended that two separate trusts be created under the laws of California

for federal and state income tax purposes, the TRUSTEES may hold all of the Trust Estate as one common fund, and are not required to make a physical division thereof.

    3.  DIVISION AND ALLOCATION OF ASSETS.  The Trust Estate, and distributions received by this Trust from the estate of the deceased SETTLOR (if any), shall be allocated among the trusts described above as follows:

    A.  Except as provided in Subparagraph B and Paragraph 4 [relating to simultaneous death], the entire Trust Estate shall be allocated to TRUST "A."

    B.  If the surviving SETTLOR, in his or her capacity as beneficiary, effectively disclaims (under Code Section 2518 or any successor provision then in effect) all, or any specific portion, of his or her interest in TRUST "A", such disclaimed amount shall be allocated to TRUST "B" to be held, administered and distributed according to its provisions.

With respect to Trust A, all income was to be paid to or for the benefit of the surviving settlor; the surviving settlor could direct the trustees to distribute principal at any time and for any reason; and the surviving settlor was granted a power, at his or her death, to appoint any part of the principal and undistributed income of Trust A.  The latter power was to "be made by last written instrument filed with the TRUSTEES, effective at the surviving SETTLOR's death and specifically referring to this power of appointment."  Any portion of Trust A not so appointed was to be added to Trust B.

As regards Trust B, net income was to be paid to the surviving settlor at least annually, and the trustees were authorized to distribute principal as they determined necessary

or advisable for the settlor's health, education, support or maintenance (after exhaustion of Trust A). Upon the death of the surviving settlor, the balance of Trust B (excluding household goods and personal effects) was to be distributed pursuant to an enumerated list of specific bequests, with the residue to the State of Israel. Decedent and Mr. Engelman also on January 10, 1990, signed substantially identical pourover wills devising and bequeathing their estates to the trustees of the Engelman Living Trust.

Decedent and Mr. Engelman amended the trust instrument on December 14, 1990, May 6, 1992, and December 28, 1994. The first two amendments revised the list of specific beneficiaries to receive assets from Trust B, and the third amendment provided further information regarding successor trustees. According to the second amendment, specific bequests from Trust B were to be made as follows: To Helen Adams, $50,000; to Carol L. Engelman, $30,000; to Jerrold W. Engelman, $10,000; to Alan Engelman, $10,000; to the American Cancer Society, $5,000; and to the Yale University School of Law, $5,000.

On December 30, 1997, Mr. Engelman died, survived by decedent. At that time, the total value of assets in the Engelman Living Trust was approximately $1,546,487. Subsequently, on February 5, 1998, decedent executed a document entitled "POWER OF APPOINTMENT". The preamble recited: "The

undersigned at present is the holder of a power of appointment over the principal of Trust A or the Survivor's Trust, which came into existence as the result of the passing of her husband, pursuant to that certain revocable Declaration of Trust executed by SAMUEL ENGELMAN and LEONA ENGELMAN on January 10, 1990." Thereafter, the instrument directed that the Trust A corpus remain in trust for the benefit of Helen Adams and then upon her death be distributed 10 percent each to the American Cancer Society, the University of California at San Diego, the City of Hope, and Sharon Commings, with the residue to Jeffrey McCoy. The power of appointment was delivered to the trustees of the Engelman Living Trust.

Decedent died on March 6, 1998. On May 11, 1998, Ms. Mattson, in her capacity as special administrator of decedent's estate, executed a document entitled "DISCLAIMER OF INTEREST IN TRUST PROPERTY". Language therein stated that Ms. Mattson, on behalf of decedent, "absolutely disclaims and renounces" all interest in assets listed on an attached schedule. The referenced schedule set forth Trust A assets valued at approximately $600,000 as of Mr. Engelman's date of death. The document further specified that "such disclaimed assets shall constitute Trust 'B' as per the express provisions" of the Engelman Living Trust.

Ms. Mattson, as successor trustee of the Engelman Living Trust, then distributed from Trust A to Trust B property worth approximately $617,317, representing the appreciated value of the disclaimed assets on the date of the distribution. After this allocation, property valued at approximately $930,557 as of decedent's date of death remained in Trust A. On July 2, 1998, checks written on the account of "Engelman Living Trust B" were issued to the following beneficiaries: To the Estate of Helen Adams, $50,000; to Carol L. Engelman, $30,000; to Jerrold W. Engelman, $10,000; to Alan Engelman, $10,000; to Yale University, $5,000; and to the American Cancer Society, $5,000. In August of 1998, a transmittal letter referencing "the balance of the B Trust portion of the Engelman Trust" and a check in the amount of $432,901.41 were sent to the State of Israel.

Thereafter, in December of 1998, a Form 706, United States Estate (and Generation-Skipping Transfer) Tax Return, was filed on behalf of decedent's estate. The reported value of the gross estate, $936,476 as of the alternate valuation date, excluded the disclaimed assets. The return claimed a charitable deduction of $285,777, comprising $95,259 each to the American Cancer Society, the University of California at San Diego, and the City of Hope. The Form 706 also reported, with respect to individual noncharitable beneficiaries, that Sharon Commings received $95,529 and Jeffrey McCoy received $535,565 from the estate.

During relevant times, Ms. Mattson also served as the appointed conservator for the person and estate of Helen Adams. In this capacity, on September 17, 1999, Ms. Mattson executed a document entitled "DISCLAIMER OF INTEREST IN TRUST PROPERTY". The writing purported to disclaim "an income interest only in the residue of Trust "A" of the  * * * ENGELMAN LIVING TRUST * * * created by a Power of Appointment executed by LEONA ENGELMAN on February 5, 1998".  The estate concedes that this attempted disclaimer was untimely and "is moot".

Discussion

I.  Inclusion of Trust Assets in the Gross Estate

    A.  General Rules

As a general rule, the Internal Revenue Code imposes a Federal tax "on the transfer of the taxable estate of every decedent who is a citizen or resident of the United States." Sec. 2001(a).  The taxable estate, in turn, is defined as "the value of the gross estate", less applicable deductions.  Sec. 2051.  Section 2031(a) specifies that the gross estate comprises "all property, real or personal, tangible or intangible, wherever situated", to the extent provided in sections 2033 through 2045.

Section 2033 broadly states that "The value of the gross estate shall include the value of all property to the extent of the interest therein of the decedent at the time of his death." Sections 2034 through 2045 then explicitly mandate inclusion of

several more narrowly defined classes of assets. Among these specific sections are section 2036, which includes transfers where the decedent retained the possession of, the enjoyment of, or the right to designate persons who shall possess or enjoy transferred property or income therefrom; section 2038, which includes revocable transfers; and section 2041, which includes property over which the decedent held a general power of appointment.

However, inclusion of certain assets in the gross estate may be avoided through operation of the disclaimer provisions of the Internal Revenue Code. For purposes of the estate tax, section 2046 incorporates by reference section 2518, which reads in part:

SECTION 2518. DISCLAIMERS.

(a) General Rule.--For purposes of this subtitle, if a person makes a qualified disclaimer with respect to any interest in property, this subtitle shall apply with respect to such interest as if the interest had never been transferred to such person.

(b) Qualified Disclaimer Defined.--For purposes of subsection (a), the term "qualified disclaimer" means an irrevocable and unqualified refusal by a person to accept an interest in property but only if--

(1) such refusal is in writing,

(2) such writing is received by the transferor of the interest, his legal representative, or the holder of the legal title to the property to which the interest relates not later than the date which is 9 months after the later of--

(A) the date on which the transfer creating the interest in such person is made, or

(B) the day on which such person attains age 21,

(3) such person has not accepted the interest or any of its benefits, and

(4) as a result of such refusal, the interest passes without any direction on the part of the person making the disclaimer and passes either--

(A) to the spouse of the decedent, or

(B) to a person other than the person making the disclaimer.

As pertains to the above-quoted section 2518(b)(3) requirement of no acceptance of benefits, regulations further provide:

A qualified disclaimer cannot be made with respect to an interest in property if the disclaimant has accepted the interest or any of its benefits, expressly or impliedly, prior to making the disclaimer. Acceptance is manifested by an affirmative act which is consistent with ownership of the interest in property. Acts indicative of acceptance include using the property or the interest in property; accepting dividends, interest, or rents from the property; and directing others to act with respect to the property or interest in property. * * * The exercise of a power of appointment to any extent by the donee of the power is an acceptance of its benefits. * * * [Sec. 25.2518-2(d)(1), Gift Tax Regs.]

See also H. Rept. 94-1380, at 67 (1976), 1976-3 C.B. (Vol. 3) 738, 801.

B.  Contentions of the Parties

For purposes of the instant case, the estate concedes on brief that "if Leona accepted the disclaimed property, the property of Trust B is included in Leona's gross estate under I.R.C. secs. 2036 and 2038."  Accordingly, the dispute of the parties centers primarily on whether decedent manifested acceptance of the assets purportedly disclaimed within the meaning of section 2518(b)(3).

Respondent contends that the so-called power of appointment executed by decedent resulted in an acceptance violative of the section 2518(b)(3) requirement.  Respondent asserts that when decedent's exercise of the power became effective and irrevocable at her death, "there was a 'manifestation of ownership' and acceptance of the benefits of the power."  Hence, it is respondent's position that any subsequent disclaimer by the executor of decedent's estate was not qualified under section 2518.

Conversely, the estate advances three principal arguments as to why no acceptance occurred in the circumstances here.  The estate maintains that the power of appointment did not result in an acceptance because:  (1) Execution of the power did not itself manifest any dominion and control over the property, nor did exercise of the power ever become effective due to the relation-back doctrine under State law; (2) execution of the power was not

specific to Mr. Engelman's property; and (3) execution of the document should not be characterized as the exercise of a power of appointment, due to the extent of decedent's rights in Trust A.

C. Analysis

The estate's point that execution of the power of appointment did not itself constitute an acceptance rests on Example (7) of section 25.2518-(2)(d)(4), Gift Tax Regs., which provides:

> Example (7). On January 1, 1980, A created an irrevocable trust in which B was given a testamentary general power of appointment over the trust's corpus. B executed a will on June 1, 1980, in which B provided for the exercise of the power of appointment. On September 1, 1980, B disclaimed the testamentary power of appointment. Assuming the remaining requirements of section 2518(b) are satisfied, B's disclaimer of the testamentary power of appointment is a qualified disclaimer.

From the foregoing example, the estate deduces that execution of a revocable instrument providing for the exercise of a testamentary power of appointment effective at death does not preclude a later disclaimer of such power. Yet respondent does not argue otherwise, pointing out that merely executing an ambulatory instrument does not constitute acceptance because the instrument is subject to revision.

Nor does there seem to be any significant disagreement between the parties about the corollary principle that an exercise of a power of appointment which has become effective may

be deemed an acceptance.  In fact, the estate maintains that it may be inferred from the above example that the regulatory language in section 25.2518-2(d), Gift Tax Regs., describing the exercise of a power of appointment as an acceptance of its benefits, "applies only to an exercise that has become effective."  Rather, the estate claims that the exercise of the power in this case never became effective, while respondent takes the opposite view.

Under California law, a power of appointment is generally revocable until the property subject thereto has been transferred or has become distributable pursuant to exercise of the power. Cal. Prob. Code sec. 695 (West 2002).  The power at issue in this case states that it was to take effect at the surviving settlor's death.  As previously indicated, the estate's contention that decedent's exercise of her power of appointment never became effective rests on the relation-back doctrine under State law. Cal. Prob. Code section 282(a) (West 2002) provides:

> Unless the creator of the interest provides for a
> specific disposition of the interest in the event of a
> disclaimer, the interest disclaimed shall descend, go,
> be distributed, or continue to be held (1) as to a
> present interest, as if the disclaimant had predeceased
> the creator of the interest or (2) as to a future
> interest, as if the disclaimant had died before the
> event determining that the taker of the interest had
> become finally ascertained and the taker's interest
> indefeasibly vested.  A disclaimer relates back for all
> purposes to the date of the death of the creator of the
> disclaimed interest or the determinative event, as the
> case may be.

On the basis of the above statute, the estate maintains that the power of appointment decedent signed on February 5, 1998, never became effective because the disclaimer subsequently executed by Ms. Mattson related back to Mr. Engelman's death on December 30, 1997, and therefore must be treated as predating the exercise.

At the outset, we note that the State law doctrine of relation back can have no potential applicability to this case unless the purported disclaimer was effective for State law purposes. Additionally, this Court has held as a general rule that a disclaimer will not be treated as qualified under section 2518 unless it is effective under applicable local law, since State law determines whether a property interest has passed. Estate of Bennett v. Commissioner, 100 T.C. 42, 67 (1993); Estate of Chamberlain v. Commissioner, T.C. Memo. 1999-181, affd. 9 Fed. Appx. 713 (9th Cir. 2001). Hence, as a threshold matter, we consider the requirements for a valid disclaimer under California law. As pertinent here, Cal. Prob. Code section 285 (West 2002) contains restrictions on the ability of a donee to make a disclaimer:

> (a) A disclaimer may not be made after the beneficiary has accepted the interest sought to be disclaimed.

> (b) For the purpose of this section, a beneficiary has accepted an interest if any of the following occurs before a disclaimer is filed with respect to that interest:

(1) The beneficiary, or someone acting on behalf of the beneficiary, makes a voluntary assignment, conveyance, encumbrance, pledge, or transfer of the interest or part thereof, or contracts to do so; provided, however, that a beneficiary will not have accepted an interest if the beneficiary makes a gratuitous conveyance or transfer of the beneficiary's entire interest in property to the person or persons who would have received the property had the beneficiary made an otherwise qualified disclaimer pursuant to this part.

      *     *     *     *     *     *     *

(3) The beneficiary, or someone acting on behalf of the beneficiary, accepts the interest or part thereof or benefit thereunder.

Thus, California law, like Federal law, incorporates a rule denying the effectiveness of a disclaimer in situations evidencing a prior acceptance of benefits.

The foregoing statute was recently interpreted by the Court of Appeals for the Ninth Circuit, to which appeal in the instant case would normally lie, in Cassell v. Kolb (In re Kolb), 326 F.3d 1030 (9th Cir. 2003). There, in the context of a bankruptcy proceeding, the Court of Appeals considered whether certain acts by a debtor constituted acceptance of a contingent interest in trust assets and thereby prevented the debtor from later disclaiming the property. Id. at 1033-1034. The appellate court focused on construction of the "broad 'catch-all' language" in Cal. Prob. Code section 285(b)(3). Id. at 1037. After first noting the dearth of California caselaw on the statute, the Court of Appeals engaged in an extensive analysis of the language and

history of the provision, as well as of constructions of similar

enactments by other States.  Id. at 1037-1041.  The Court of

Appeals then concluded:

> we think the language of § 285(b)(3), the definitions
> incorporated by the Uniform Disclaimer of Transfers
> Act, and the decisions construing analogous state
> probate codes, all demonstrate that the California
> legislature intended to prohibit the disclaimer of an
> interest accepted through conduct by a beneficiary
> implying an intent to direct or control the property in
> a manner that conveys more than a de minimis benefit to
> the beneficiary or a third party. * * * Application of
> this standard is a fact-sensitive inquiry that centers
> on the conduct of the beneficiary, and the result of
> such conduct.  [Id. at 1039.]

Applying the just-described rule to the facts before it, the

Court of Appeals held that the debtor's declaration of an

interest in the disputed trust on several loan applications

constituted an acceptance of his contingent interest in the trust

assets.  Id. at 1041.  Further, according to the appellate court:

"That acceptance of 'part' of the contingent interest thus made

his later disclaimer ineffective under § 285(b)(3) of the

California Probate Code, because acceptance of a part of, or

benefit under, the interest constitutes acceptance of the

interest in its entirety."  Id.

Here, the Court is satisfied that decedent would be

considered under California law to have accepted her interest in,

and power of appointment over, all of the assets contained in

Trust A.  Decedent executed a power of appointment which on its

face provides for disposition of the assets of Trust A in their

entirety. She died without having amended the document's language or in any way restricted its reach. Such conduct is reasonably interpreted as implying an intent to direct or control the property in a manner that conveys more than a de minimis benefit to the third parties named in the power of appointment. Hence, the subsequent disclaimer would lack efficacy for State law purposes, and the relation-back doctrine would not apply.

Moreover, regardless of the validity of decedent's disclaimer under State statutes, caselaw indicates that the relation-back concept is entitled to only limited recognition for Federal tax purposes. We acknowledge that, as pointed out by the estate, this Court has relied on the doctrine in determining the requisite signatory beneficiaries for a valid special use valuation election under section 2032A. McDonald v. Commissioner, 89 T.C. 293, 304-305 (1987), affd. in part on this issue and revd. in part on other grounds 853 F.2d 1494 (8th Cir. 1988).

In McDonald v. Commissioner, supra at 304-305, we held insufficient an election signed by the original disclaiming beneficiary, and not the ultimate recipients, of property to which the election related. We reasoned that the election was intended to evidence the written consent of those parties obtaining an interest in the property to be personally liable for any recapture tax imposed on later disposition or change in use

of the property.  Id.  Practical and administrative concerns

dictated that we define the interested parties in view of State

relation-back laws.

Nonetheless, the U.S. Supreme Court has summarized the

broader policy concerning the relation-back doctrine in Federal

tax contexts as follows:

> Cases like Jewett [v. Commissioner, 455 U.S. 305
> (1982)] and this one illustrate as well as any why it
> is that state property transfer rules do not translate
> into federal taxation rules.  Under state property
> rules, an effective disclaimer of a testamentary gift
> is generally treated as relating back to the moment of
> the original transfer of the interest being disclaimed,
> having the effect of canceling the transfer to the
> disclaimant ab initio and substituting a single
> transfer from the original donor to the beneficiary of
> the disclaimer.  Although a state-law right to disclaim
> with such consequences might be thought to follow from
> the common-law principle that a gift is a bilateral
> transaction, requiring not only a donor's intent to
> give, but also a donee's acceptance, state-law
> tolerance for delay in disclaiming reflects a less
> theoretical concern.  An important consequence of
> treating a disclaimer as an ab initio defeasance is
> that the disclaimant's creditors are barred from
> reaching the disclaimed property.  The ab initio
> disclaimer thus operates as a legal fiction obviating a
> more straightforward rule defeating the claims of a
> disclaimant's creditors in the property disclaimed.

> The principles underlying the federal gift tax
> treatment of disclaimers look to different objects,
> however.  As we have already stated, Congress enacted
> the gift tax as a supplement to the estate tax and a
> means of curbing estate tax avoidance.  Since the
> reasons for defeating a disclaimant's creditors would
> furnish no reasons for defeating the gift tax as well,
> the Jewett Court was undoubtedly correct to hold that
> Congress had not meant to incorporate state-law
> fictions as touchstones of taxability when it enacted
> the Act.  Absent such a legal fiction, the federal gift
> tax is not struck blind by a disclaimer. * * * [United

States v. Irvine, 511 U.S. 224, 239-240 (1994);
citations and fn. ref. omitted.]

The instant case fails to present any compelling considerations of the nature seen in McDonald v. Commissioner, supra. Nor would recognition of the relation-back concept serve to advance the object of protecting the disclaimed assets from the reach of decedent's State-law creditors. Accordingly, precedent does not justify use of the relation-back doctrine in these circumstances to relieve decedent of the effects of having exercised her power of appointment.

Having concluded that the legal fiction of relation back should not be employed to prevent decedent's power of appointment from becoming effective at her date of death, the Court is satisfied that such effective power should be construed as an acceptance of the Trust A property within the meaning of section 2518. Regulations under that section make explicit reference not only to exercise of a power of appointment but also more generally to "directing others to act with respect to the property or interest in property" as marks of acceptance. Sec. 25.2518-2(d)(1), Gift Tax Regs. Decedent's conduct falls within these guidelines.

Moreover, the estate's further argument that decedent's execution of the power fails as an acceptance because it was not specific to Mr. Engelman's property is misplaced on account of the timing issues inherent in the preceding discussion. The

estate alleges that because the power of appointment simply applied "to whatever property happens to be in Trust A on the death of Leona and might not apply to any of Samuel's property", nothing in the document's execution signaled that decedent claimed ownership of Mr. Engelman's property.  Yet our focus is not on when the power was executed but on the date of decedent's death when it became effective.  When decedent died without having revoked or limited the document, and the power on its face disposed of all property in Trust A now alleged to be part of her gross estate, she asserted control over all the relevant assets.

In the alternative, the estate seeks to avoid the result stemming from characterization of the February 5, 1998, document as the exercise of a power of appointment that became effective at decedent's death by arguing that, on account of the extent of her rights in Trust A, decedent could not have held or exercised a power of appointment.  The estate's contentions are founded in large part on the State law doctrine of merger.  Generally, where an equitable and legal estate become united in a single person, i.e., where the sole beneficiary is also the sole trustee, the two interests merge and the trust terminates.  Nellis v. Rickard, 66 P. 32, 33 (Cal. 1901); 60 Cal. Jur. 3d, Trusts, sec. 286.

The estate alleges:  "Because Samuel left his property to Trust A where Leona had an immediate and unrestricted right of withdrawal, there was no restriction on Leona's current interest

in the property to support the granting of a separate power of appointment in the same property." Rather, the estate would have us view decedent's rights over Trust A as a power to alter, amend, or revoke the trust.[1]

However, California by statute provides an exception to the doctrine of merger:

> If a trust provides for one or more successor beneficiaries after the death of the settlor, the trust is not invalid, merged, or terminated in either of the following circumstances:
>
> *  *  *  *  *  *  *
>
> (b) Where there are two or more settlors, one or more of whom are trustees, and the beneficial interest in the trust is in one or more of the settlors during the lifetime of the settlors. [Cal. Prob. Code sec. 15209 (West 1991).]

Operation of this statute is illustrated by Ammco Ornamental Iron, Inc. v. Wing, 31 Cal. Rptr. 2d 564 (Ct. App. 1994). There, upon his mother's death, Mr. Wing became the sole trustee of a trust with respect to which he held a life income interest; a power to invade principal for support, health, or maintenance; and a testamentary power of appointment exercisable in favor of any persons other than himself, his estate, or his creditors. Id. at 566-567. If Mr. Wing failed to exercise the power of

---

[1] We further note that acceptance of the premises underlying this argument could lead to inclusion of the assets of the living trust, in their entirety, in decedent's gross estate under other rules, such as those which can apply under secs. 2031 and 2033 as though decedent owned the property outright.

appointment, the trust instrument provided that the corpus should go to his children in equal shares.  Id. at 566.

Given these facts, the court of appeal emphasized that "persons in existence, who are specifically designated in a trust instrument to take in default of the exercise of a power of appointment by the holder of the preceding estate, are beneficiaries of that trust and acquire vested remainder interests, although their interests are subject to complete divestment."  Id. at 569.  Because Mr. Wing's children were living when the trust was created, the court held the doctrine of merger inapplicable, concluding that the children were additional beneficiaries of the trust whose interests could not be disregarded.  Id. at 569-570.

We see no material distinction between the situation at issue in Ammco Ornamental Iron, Inc., and that presented here. Like Mr. Wing, decedent was granted a life income interest in, a power to invade, and a power of appointment over the relevant trust.  Although decedent's powers were in some respects broader than those of Mr. Wing, none of the differentiating features figured in the California court's analysis.  The crucial similarity lies in the fact that the two trust instruments both named beneficiaries in existence at the time of execution to take if the respective powers of appointment were not exercised. These vested future interests were sufficient in Ammco Ornamental

Iron, Inc., to prevent merger.  The naming of default
beneficiaries here, under the Trust B provisions, should yield an
identical result.

The estate also makes the further contention that, even
apart from the merger doctrine, "Leona's unlimited right of
withdrawal over all of Trust A (and her rights to alter, amend or
revoke Trust A) and her failure to withdraw the property made her
effectively the settlor of all property of Trust A and eliminated
the distinction of his former property or hers."[2]  A fortiori,
the estate alleges that as sole settlor of Trust A, decedent was
unable to grant a power of appointment to herself over the
property therein.

Yet, the estate has cited no California authority indicating
that courts of that State would disregard the actual parties and
the express drafting of the instrument at issue.  Additionally,
as respondent points out, the definitions with respect to powers
of appointment contained in Cal. Prob. Code section 610 (West
2002) appear to contemplate that an individual's retained power
to direct disposition of his or her property would be
characterized as a power of appointment.  See Cal. Prob. Code
sec. 610(e) ("'Donor' means the person who creates or reserves a
power of appointment."); Cal. Prob. Code sec. 610(d) ("'Donee'

---

[2] See supra note 1.

means the person to whom a power of appointment is given or in whose favor a power of appointment is reserved.").

D. Conclusion

We conclude that decedent's execution of the document entitled "POWER OF APPOINTMENT", which became effective upon and by reason of her death, constituted an acceptance of the property in Trust A within the meaning of section 2518. Consequently, the later attempted disclaimer by her executor was not qualified for Federal estate tax purposes. The trust assets of approximately $617,317 that were the subject of the disclaimer are therefore includable in decedent's gross estate.

II. Deductions From the Gross Estate for Charitable Gifts

A. General Rules

Section 2055(a) provides a deduction from the gross estate for the value of bequests, legacies, devises, or transfers to, inter alia, (1) the United States or a political subdivision thereof, for public purposes; (2) corporations organized and operated exclusively for religious, charitable, scientific, literary, or educational purposes; and (3) trustees or fraternal organizations, but only if the gifts are to be used exclusively for religious, charitable, scientific, literary, or educational purposes. Sec. 2055(a)(1), (2), and (3). Federal courts have construed gifts to foreign political units, when clearly restricted to charitable purposes, as gifts in trust within the

meaning of section 2055(a)(3).  E.g., <u>Kaplun v. United States</u>, 436 F.2d 799 (2d Cir. 1971); <u>Natl. Sav. & Trust Co. v. United States</u>, 193 Ct. Cl. 775, 436 F.2d 458 (1971).  The Internal Revenue Service has adopted this position, as follows:  "A deduction is allowable under section 2055 of the Code with respect to a transfer of property to a foreign government or political subdivision thereof for exclusively charitable purposes."  Rev. Rul. 74-523, 1974-2 C.B. 304.  Conversely, "where the use of such property is not limited to exclusively charitable purposes within the meaning of sections 2055(a)(2) and 2055(a)(3)", the deduction will be disallowed.  <u>Id.</u>

B.  <u>Contentions of the Parties</u>

The estate argues that if the assets transferred to Trust B are included in decedent's gross estate, charitable deductions are allowable for the bequests thereunder to the American Cancer Society, Yale Law School, and the State of Israel.  It is the estate's position that even if the disclaimer was not qualified under section 2518, it was nonetheless effective for State law purposes.  Therefore, according to the estate, decedent is treated as having made gifts to the corresponding beneficiaries when property was distributed pursuant to the terms of Trust B.

Respondent cites three principal reasons why the distributions made to entities specified in Trust B do not yield charitable deductions.  The estate responds to each such

allegation. First, respondent maintains that the explicit language of the trust agreement precludes any argument that a disclaimer not effective under section 2518 can, nonetheless, be effective under State law to bring into operation the provisions of Trust B. The trust instrument states that allocation to Trust B would occur in the event that the surviving settlor "effectively disclaims (under Code Section 2518 or any successor provision then in effect)". The estate counters that the foregoing terms create no express requirement but only an inference, alerting the trustee to be aware of the statute.

Second, respondent contends that even if the disclaimer was effective under State law, the property at issue passed to Trust B as a result of a discretionary act of the executor in making the disclaimer, and not because of an act by decedent. It is respondent's position that decedent's own actions in executing the power of appointment and her subsequent death caused all property to be treated at that time as subject to the Trust A provisions. To this point, the estate once again responds with reference to the relation-back doctrine.

Third, with respect to the distribution to the State of Israel, respondent avers that a deduction is not allowable in any event because Trust B provides only for an unrestricted gift. Accordingly, respondent characterizes the gift as having failed the requirement that the donor restrict use of a gift made to a

foreign government to charitable uses.  The estate, in contrast, alleges that any such failure is cured by the following text of Decision 6171 of the Cabinet of the Government of the State of Israel (Decision 6171), dated October 1995 (a copy and translation of which have been stipulated by the parties):

> 2.(a) Estates for the benefit of the State, whether or not the testator has specified the ultimate purpose, shall be designated by the Administrator General, Ministry of Justice, for the purposes and to the bodies as determined by the Public Committee as hereinafter provided.  Where the testator has specified the object, the allocation shall be made within the scope of that object.
>
> (b) In estates for the benefit of the State where the testator has not specified their object or where the object is incapable of fulfillment, the Committee shall make the designation exclusively for charitable purposes, namely - welfare, education, health, culture, religion, science, art and the advancement of all other humanitarian and social aims.
>
> (c) Monies from estates shall not be designated in substitution of monies that have been budgeted in the State Budget and shall not be designated for the financing of activities which are directly carried out by Government Ministries.

C.  Analysis

Regulations promulgated under section 2055 clarify that a deduction is allowed under the statute "for the value of property included in the decedent's gross estate and transferred by the decedent during his lifetime or by will".  Sec. 20.2055-1(a), Estate Tax Regs. (emphasis added).  Courts likewise have declined to permit deductions where the amounts passing to charity turned upon the actions either of the decedent's personal

representatives, see <u>Estate of Marine v. Commissioner</u>, 97 T.C. 368, 378-379 (1991), affd. 990 F.2d 136 (4th Cir. 1993), or of beneficiaries of the estate, see <u>Bach v. McGinnes</u>, 333 F.2d 979, 983-984 (3d Cir. 1964).

Here, we agree with respondent that the circumstances of this case preclude treating the amounts received by the Trust B beneficiaries as having been transferred by decedent. Rather, the record reveals that those named in Trust B obtained distributions on account of discretionary acts by Ms. Mattson. By the terms of the Engelman Living Trust, allocation to Trust B was conditioned on an effective disclaimer under section 2518. Ms. Mattson's decision to place assets in Trust B and ultimately to distribute the property to the named beneficiaries consequently did not occur within the framework of the trust instrument. The estate's suggestion that we disregard the written language as merely an advisory reminder to the trustee is unsupported and unconvincing. The relevant documents do not show that a State law disclaimer could suffice to render operative the provisions of Trust B.

Furthermore, even if a disclaimer effective under State statutes could operate to transfer assets from Trust A to Trust B within the confines of the written agreement, we have already concluded that the disclaimer executed here would not be recognized under pertinent California law. As a result,

decedent's disposition of the Trust A corpus by means of her power of appointment became irrevocable at her death and cannot, on account of the relation-back doctrine, be disregarded. Decedent acted to transfer the property of Trust A to those named in her power of appointment, rather than to Trust B and its beneficiaries. Ms. Mattson's actions to do otherwise cannot be attributed to decedent.

As pertains to the gift to the State of Israel, caselaw is contrary to the estate's position. The donor, not the donee, must restrict use of the gift to charitable purposes. The foregoing principle has been recognized by Federal courts both in construing the predecessor of section 2055 in the Revenue Act of 1926, ch. 27, sec. 303, 44 Stat. 72, and in interpreting section 2055 itself. See Contl. Ill. Natl. Bank & Trust Co. v. United States, 185 Ct. Cl. 642, 403 F.2d 721 (1968); Levey v. Smith, 103 F.2d 643 (7th Cir. 1939). As stated in an early pronouncement:

> Plaintiff urges that the statutory test "is the use to which the property is to be put." In our view the test is: For what purpose is the property devised? Consequently, a declaration by the donee that property will be used for a charitable purpose cannot determine the use for which it was bequeathed. It is the act of the testator that determines, for purposes of deduction, whether gifts or contributions which have been bequeathed to a legatee "are to be used" exclusively for religious, charitable and educational purposes. We do not hold that parol evidence is not admissible for the purpose of showing that a bequest, absolute on its face, was in fact intended by the testator and understood by the legatee to be burdened by a trust. But such evidence to be material must relate to words or acts of the testator and must tend

to disclose the purpose of the testator in using the testamentary language. * * * [Levey v. Smith, supra at 648; fn. ref. omitted.]

To like effect:

The fact that the gift involved here was used for a charitable purpose presents plaintiff's most appealing argument. But this is not sufficient to meet the requirements of sec. 2055(a)(3). If the right to make the deduction could be met by showing only a charitable use of the contribution, the applicability of the estate tax in all similar situations would depend upon the vagaries of post-estate planning. The testator, and he alone, must order the recipient to hold or use the contribution exclusively for charitable purposes. Further, the statute does not permit the deduction unless it is shown that the testator intended that the gift be used exclusively for a charitable project. * * * [Contl. Ill. Natl. Bank & Trust Co. v. United States, supra at 725-726; emphasis added.]

Here, the language in the trust agreement pertaining to the foreign bequest reads in its entirety: "The remainder of the Trust Estate shall be distributed to the STATE OF ISRAEL." Thus, the governing instrument is devoid of any restrictions circumscribing uses of the gift. Moreover, the record contains no evidence from which it can be inferred that decedent intended to limit the contribution to charitable purposes. It is noteworthy that Decision 6171, on which the estate relies, did not come into being until October 1995, long after the provision granting the residue of Trust B to the State of Israel was executed as part of the Engelman Living Trust on January 10, 1990. Accordingly, Decision 6171 sheds no light on decedent's intentions and, as a unilateral declaration by the donee, is

insufficient in and of itself to satisfy the requirements of section 2055.

D.  Conclusion

For the reasons discussed above, the estate is not entitled to charitable deductions for the amounts distributed to beneficiaries named in Trust B of the Engelman Living Trust.

To reflect the foregoing and concessions,

Decision will be entered

under Rule 155.