T.C. Memo. 2012-6

UNITED STATES TAX COURT

ESTATE OF DWIGHT T. FUJISHIMA, DECEASED, EVELYN FUJISHIMA,
PERSONAL ADMINISTRATOR, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 3930-10.                    Filed January 9, 2012.

Evelyn Fujishima, pro se.

<u>D. Anthony Abernathy</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

COHEN, <u>Judge</u>:  Respondent determined a deficiency of
$1,956,202 in the estate tax of the Estate of Dwight T. Fujishima
(decedent), who died intestate in Hawaii on January 23, 2005.
After concessions, the issues for decision, all factual, are:
(1) Whether the taxable estate should be increased to include the

$10,000 face amount of a Conseco, Inc. Senior Note (Conseco note); (2) whether the taxable estate should include $1,037,973 as the value of a life insurance policy from West Coast Life Insurance Co. (West Coast policy) or should be reduced by excluding $1 million as the value of a life insurance policy from Allianz Life Insurance Co. (Allianz policy); (3) whether the estate is entitled to deductions of $87,000 for executor's commissions, $50,000 for attorney's fees, and $130,000 for charitable contributions; and (4) whether the estate is entitled to a deduction for $175,000 allegedly owed by decedent to his mother as of the date of death. Unless otherwise indicated, all section references are to the Internal Revenue Code in effect as of the date of death, and all Rule references are to the Tax Court Rules of Practice and Procedure.

FINDINGS OF FACT

Some of the facts have been stipulated, and the stipulated facts are incorporated in our findings by this reference. Evelyn Fujishima (Ms. Fujishima) is the mother of decedent and the personal administrator of his estate. She resided in Hawaii at the time the petition was filed.

At the time of decedent's death, he was the owner of the Conseco note that had been purchased for $10,000. On a brokerage statement for decedent's investment account for January 2005, the note was described as "Conseco Inc. (Escrow) Senior Notes cpn

10.75% due 06/15/08, dtd 06/29/01". The "Current Price" was shown as "N/A" and was accompanied by a note stating that "This unpriced security is not reflected in your total portfolio value." The brokerage statement also reported that decedent was the owner of 273 shares of Conseco, Inc. stock at a price of $19.05 per share. The net portfolio value of priced assets in the brokerage account exceeded $654,000, and the estimated annual income was $29,810.

Decedent was also the record owner of three life insurance policies, the West Coast policy issued October 22, 2003, the Allianz policy, and a $100,000 policy from Amerus Life Insurance Co. (Amerus policy) issued on November 7, 1983. Decedent's brother, Edmund Fujishima, was the named beneficiary of the West Coast and Allianz policies, and Ms. Fujishima, the mother of decedent and of his brother, was the named beneficiary of the Amerus policy.

Decedent was injured in 1992 and repeatedly thereafter and had difficulty working. Thus Ms. Fujishima took care of him; he lived in her house; and she fed him, clothed him, and paid his bills. She did so gratuitously and would have done so without expectation of payment. The expenses were paid in cash, and no records were kept showing the amounts expended by Ms. Fujishima or by decedent.

As administrator of the estate, Ms. Fujishima gathered information and provided it to her attorney, but she kept no records of the work performed by her or by her attorney. Thus there are no records supporting the amounts claimed for executor's commissions or attorney's fees.

On the Form 706, United States Estate (and Generation-Skipping Transfer) Tax Return, filed on April 6, 2007, the Conseco note was not included as an asset of the estate. The values of the Allianz policy and the Amerus policy were included, but the West Coast policy was shown as "(disputed ownership)" with no value reported. Deductions were claimed for executor's commissions of $87,000, attorney's fees of $94,000 (now conceded by petitioner to be $50,000), administrative expenses of $8,500 (now conceded by petitioner), charitable contribution deductions of $142,000 (now conceded by petitioner to be $130,000), and $175,000 owed to Ms. Fujishima.

In the notice of deficiency, in addition to the items remaining in dispute, respondent determined that the taxable estate included the value of certain jointly owned real property; but respondent has now conceded that the value of the real property may be excluded.

OPINION

<u>Procedural Matters</u>

By notice served January 7, 2011, the case was set for trial in Honolulu, Hawaii, on May 23, 2011.  On March 7, 2011, respondent served on petitioner requests for admissions, seeking admissions as to all of the issues in this case.  Although the requests for admissions referred to Rule 90, the requests did not advise petitioner of the consequences of failing to respond as provided in Rule 90(b).  Petitioner failed to respond to the requests, and in respondent's pretrial memorandum and posttrial brief, respondent contends that the matters set forth in the requests are deemed admitted (except as to the includability of the real property, now conceded by respondent).

At the time of trial, the Court noted the deemed admissions and allowed 30 days for petitioner to provide additional documentation of the estate's claims and to make a motion to be relieved of the admissions.  (Petitioner was assisted at trial by the attorney who had prepared the estate tax return but who did not enter an appearance, apparently because she was not admitted to practice before this Court.)  A supplemental stipulation was filed, but no motion to be relieved of the admissions was received.

Rule 90(f) provides in part that

> withdrawal or modification [of an admission] may be permitted when the presentation of the merits of the case will be subserved thereby, and the party who obtained the admission fails to satisfy the Court that the withdrawal or modification will prejudice such party in prosecuting such party's case or defense on the merits. * * *

Although petitioner did not make a motion to be relieved of the deemed admissions, respondent's failure to comply completely with Rule 90(b) suggests that the admissions should not conclusively bind petitioner, and we will disregard them for purposes of this opinion. We describe below the evidence at trial. Because of the absence of persuasive evidence in support of petitioner's claims, respondent is not prejudiced by disregarding the deemed admissions.

Because petitioner has not substantiated the claimed deductions and has not maintained required records, the burden of proof has not shifted to respondent. See sec. 7491(a)(2). Petitioner thus must prove that the determinations in the statutory notice are erroneous. See Rule 142(a).

The Conseco Note

Petitioner contends that the Conseco note had no value as of the date of death and relies on the January 2005 brokerage statement that does not include a value for the Conseco note. Petitioner also contends that the issuer "went broke" and thus the note had no value. Respondent contends that petitioner has

not established that the note had a value less than the face amount.

We conclude that the brokerage statement is an indication that the value of the note was not available or not readily ascertainable but that it is unlikely that the note was worthless when the Conseco stock was valued at $19.05 per share. Without any evidence justifying reduction of the value to less than the face amount, we sustain respondent's determination that the note is includable in the taxable estate at $10,000.

Life Insurance Policies

Petitioner contends that the West Coast and Allianz policies, although shown in the issuing companies' records as owned by decedent, were in fact owned by Ms. Fujishima. Ms. Fujishima testified that she paid the premiums, and she produced copies of three canceled checks dated in 2003 and 2004 payable to West Coast Life Insurance Co. She claims that the record of the company showing decedent as the owner was a mistake by the agent, but she could not produce any documents concerning the policy or the testimony of the agent. Her pretrial memorandum states: "There is some question as to whether she ever received the actual policies, so she in her review would have noted the error."

Respondent contends that the inclusion of the Allianz policy and the Amerus policy on the estate tax return undermines

petitioner's argument that Ms. Fujishima intended to be the owner of the West Coast and Allianz policies and that it would be illogical to treat the policies inconsistently.  Respondent also relies on inclusion of the Allianz policy on the estate tax return as an admission.  See Estate of Hall v. Commissioner, 92 T.C. 312, 337-338 (1989) (values reported on an estate tax return are an admission so that lower values cannot be substituted without cogent proof); McShain v. Commissioner, 71 T.C. 998, 1010 (1979).

Without any corroboration of Ms. Fujishima's conclusory and subjective testimony as to her intent, we conclude that the record ownership of the West Coast policy is the most persuasive evidence and that the admission as to the Allianz policy by reporting it as an asset of the estate on the estate tax return has not been overcome.  We cannot conclude that Ms. Fujishima was the owner of the policies.  It is more likely that she paid for them on behalf of decedent and her other son, just as she paid other expenses for decedent during his lifetime.  We hold the values of the West Coast and Allianz policies should be included in the taxable estate.

Unsubstantiated Deductions

Petitioner presented no detail to support the amounts claimed as deductions for executor's commissions or attorney's fees on the estate tax return.  She conceded that she had no

records to support the deductions. She estimates in her posttrial brief, without support in the evidence, that she spent 700 hours gathering and organizing decedent's records and requesting missing documents, to be compensated at the rate of $100 per hour, and requests an additional $17,000 for her assistance in preparation of the estate tax return. She also includes in her posttrial brief, unsupported by any evidence, claims with respect to the hours and rates of the estate's attorney.

Amounts deductible as administration expenses are limited to those actually and necessarily incurred. Sec. 2053(a)(2); see sec. 20.2053-3(a) and (b)(1), Estate Tax Regs. We are not persuaded that the amounts claimed by petitioner for executor's commissions or for attorney's fees are reasonable or that they have, to date, been actually and necessarily incurred. We have insufficient evidence to estimate the reasonable amount. The amounts claimed on the return cannot be allowed. The expenses actually incurred by the estate may be considered in the final computation of estate tax liability, however. See Rule 156.

Petitioner claims $130,000 (reduced from $142,000) as charitable contribution deductions of the estate. Section 2055 provides a charitable contribution deduction for amounts transferred by a decedent for qualified charitable and religious uses. The transfers, however, must have been made during the

decedent's lifetime or by will.  Sec. 20.2055-1(a), Estate Tax Regs.  Decedent did not have a will, and petitioner claims only that the charitable contribution deductions were consistent with conversations between Ms. Fujishima and decedent.  Respondent also argues that the claimed amounts have not been substantiated by adequate records.

Deductions are not permitted where the amounts passing to a charity turn on the actions of a personal representative.  Estate of Engelman v. Commissioner, 121 T.C. 54, 70-71 (2003).  The amounts disputed in this case were determined by Ms. Fujishima after decedent's death, and, in any event, the amounts are not adequately substantiated.  They are not allowable deductions.

Alleged Debt to Ms. Fujishima

The taxable value of an estate may be determined after deducting claims against the estate if the claims "when founded on a promise or agreement" were "contracted bona fide and for an adequate and full consideration in money or money's worth."  Sec. 2053(a)(3), (c)(1)(A).

Ms. Fujishima claims $165,000 plus $10,000 interest as the amount owed by her son to her for her care of him during his lifetime.  Attached to the supplemental stipulation (not produced through the time of trial) is a purported promissory note dated June 30, 2000, for $165,000 plus interest at the rate of

6 percent. Respondent challenges the authenticity of the note and its sufficiency to prove a debt obligation.

Ms. Fujishima testified that the debt resulted from her caring for her son after his injury in 1992 and subsequent disabilities but acknowledges that she would have cared for him even if he had not agreed to pay her back. She did not keep any records showing the amounts that she provided to or for decedent. When asked how he was going to pay her, she stated: "I'm trying to get it from his estate", which suggests that the debt was not valid and enforceable during his lifetime. She testified that he repaid "probably $5, $10, $20, * * * very minimal". Decedent's brokerage account statement as of the date of death suggests that the debt could have been paid during his lifetime if it were recognized as valid by decedent and his mother. We are not persuaded that the debt was real, and it cannot be allowed as a deduction.

To reflect the foregoing,

<u>Decision will be entered</u>

<u>under Rule 155</u>.