T.C. Memo. 2017-223

UNITED STATES TAX COURT

WAYNE D. RAMSAY, Petitioner <u>v.</u>
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 15959-14.                          Filed November 15, 2017.

Wayne D. Ramsay, pro se.

<u>Jeffrey D. Heiderscheit</u> and <u>Brock E. Whalen</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

ASHFORD, <u>Judge</u>:  Respondent determined a deficiency of $4,243 in petitioner's Federal income tax for the 2011 taxable year.  Respondent now concedes that the deficiency is not more than $3,203.  The issues for decision, for 2011, are:  (1) whether petitioner's taxable income includes imputed income of $891 from a former employer's purchase of a life insurance policy and (2) whether

[*2] we have jurisdiction to determine petitioner's liability for interest on the deficiency.[1]

FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulation of facts and the attached exhibits are incorporated herein by this reference. Petitioner resided in Texas at the time the petition was filed with the Court.

Before 2011 petitioner retired as a pilot for Delta Airlines (Delta). He continued to receive income from Delta that he reported on his Federal income tax returns. For 2011 Delta issued a Form W-2, Wage and Tax Statement, reporting income of $11,989 to petitioner, which he reported on his Form 1040, U.S. Individual Income Tax Return, timely filed on October 17, 2012 (2011 original return). The reported amount included $891 in imputed income for premiums on a life insurance policy Delta purchased for petitioner. Petitioner understood that the $891 represented life insurance coverage that Delta purchased to cover him during 2011.

During 2011 petitioner also received income from various other sources, including distributions from an individual retirement account, pensions, dividends,

---

[1]Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the year in issue. Some amounts are rounded to the nearest dollar.

[*3] and capital gains. He received but did not report on his 2011 original return $18,336 in taxable dividends and capital gains. On this return petitioner reported an overpayment of $10,618, which included $4,781 applied from his 2010 Federal income tax return and an $8,500 payment made with a request for extension of time to file his 2011 Federal income tax return. Petitioner also indicated that he wanted this overpayment applied for the 2012 taxable year.

On the basis of the omitted capital gains and dividend income that had been reported to the Internal Revenue Service (IRS) by the payors, the IRS sent petitioner a notice of deficiency on April 14, 2014. The notice determined a deficiency in petitioner's Federal income tax of $4,243 but did not determine any penalties. In his petition filed with the Court on July 9, 2014, petitioner did not dispute the unreported income but stated that his liability was overpaid and that he had employed an enrolled agent to prepare an amended return for 2011. Petitioner indicated that he was "contesting any interest or penalties resulting from" the omission of income on his 2011 original return.

On September 24, 2015, petitioner mailed to respondent two Forms 1040X, Amended U.S. Individual Income Tax Return, and two Forms 1040 "as amended" for 2011. Petitioner's first Form 1040X and Form 1040 "as amended" (first amended return) reported $14,513 of capital gains and $3,749 of ordinary

**[*4]** dividends omitted from his 2011 original return, reported tax owed of $3,203, and claimed an overpayment of $7,414 to be applied for the 2012 taxable year. His first amended return was signed on May 15, 2014, by the enrolled agent petitioner referenced in his petition and on September 23, 2015, by petitioner. Respondent accepted and properly processed this return.

Petitioner's second Form 1040X and Form 1040 "as amended" (second amended return) removed "$891 for life insurance policy" from the income reported on his 2011 original return and his first amended return and reported an overpayment of $7,664 to be applied for the 2012 taxable year. His second amended return was signed on July 15, 2015, by the enrolled agent petitioner referenced in his petition and on September 23, 2015, by petitioner. Respondent did not process this return.

OPINION

Both issues in this case arise because petitioner changed his Federal income tax reporting positions after the IRS sent him the notice of deficiency. On his 2011 original return, he (1) reported the income shown on the 2011 Form W-2 Delta issued to him, including $891 of imputed income relating to a life insurance policy, and (2) indicated that he wanted a $10,618 overpayment applied against his liability for 2012. In the first and second amended returns petitioner submitted in

**[*5]** 2015 he continued to ask that the reported overpayment be applied for 2012, first reducing the amount by tax due on the 2011 income items omitted from his 2011 original return and then excluding the $891 item reported as income on his 2011 original return and his first amended return.

Petitioner did not report on his 2011 original return $18,336 of capital gains and dividend income that, according to his first amended return, increased his liability for 2011 by $3,203, the amount that respondent now agrees is the correct deficiency. On his first amended return petitioner again directed that an overpayment be applied against his 2012 liability but reduced the amount claimed by his newly reported tax liability for 2011. His first amended return was submitted on September 24, 2015, over two years and five months after his 2012 Federal income tax return was due. Petitioner contends that because he consistently overpaid his tax liability and directed that an overpayment be applied for subsequent years, the IRS always had more than enough to cover his liabilities so that he should not be liable for interest on the deficiency for 2011.

I.    Imputed Income From Life Insurance Policy

The record does not explain the circumstances under which Delta included imputed income in the 2011 Form W-2 issued to petitioner, but we infer from petitioner's testimony that it related to a life insurance policy provided to him

**[\*6]** pursuant to a union contract covering employees, including former employees such as petitioner.[2] The terms of the policy are not in the record, so we cannot determine whether the payment of premiums by Delta should have been included in petitioner's taxable income. See sec. 79(a).[3]

Petitioner argues that he did not ask for and did not want life insurance and that he persuaded the IRS that the imputed income relating to the same policy reported on his Form W-2 for the 2010 taxable year was properly excluded for that year.

Petitioner, however, has not overcome the applicability of three well-established rules. First, reporting an item of income on his return constituted an admission that must be overcome by cogent evidence. See Waring v. Commissioner, 412 F.2d 800, 801 (3d Cir. 1969), aff'g per curiam T.C. Memo. 1968-126; Estate of Hall v. Commissioner, 92 T.C. 312, 337-338 (1989); Lare v. Commissioner, 62 T.C. 739, 750 (1974), aff'd without published opinion, 521

---

[2]Petitioner described the policy as one "which a former employer bought for a group of former employees."

[3]Sec. 79(a) provides that an employee shall include in his gross income the cost of group term life insurance on his life, provided under a policy carried by his employer, but only to the extent that the cost exceeds the sum of the cost of $50,000 of the insurance plus any amounts paid by the employee toward the purchase of the insurance.

**[*7]** F.2d 1399 (3d Cir. 1975); cf. Estate of Fujishima v. Commissioner, T.C. Memo. 2012-6. Petitioner contends that in 2011 he notified Delta that he did not want the life insurance policy that led to the imputed income, but the policy apparently was in effect and provided a taxable benefit to petitioner unless and until it was canceled. Petitioner has not overcome the effect of the admission on his 2011 original return, which was repeated on his first amended return.

Second, each tax year stands alone, so that acceptance of a position by the IRS for one year (and it is not clear from the correspondence on which petitioner relies whether the IRS accepted his theory for 2010) is not controlling in a later year. See Dickman v. Commissioner, 465 U.S. 330 (1984); Dixon v. United States, 381 U.S. 68, 72-75 (1965); Auto. Club of Mich. v. Commissioner, 353 U.S. 180, 183-184 (1957); Schuster v. Commissioner, 800 F.2d 672, 676 (7th Cir. 1986), aff'g 84 T.C. 764 (1985).

Third, the IRS is not required to accept and process petitioner's second amended return on which he deleted the imputed income item and claimed a larger overpayment. See Badaracco v. Commissioner, 464 U.S. 386, 393 (1984) ("[A]n amended return is a creature of administrative origin and grace."); Goldring v. Commissioner, 20 T.C. 79, 81 (1953) (holding that the acceptance or rejection of an amended return is solely within the discretion of the Commissioner); Roberts v.

**[\*8]** <u>Commissioner</u>, T.C. Memo. 2012-144. We thus reject petitioner's claim that the IRS should accept his second amended return.

## II.  Application of Overpayment

That third principle also requires us to reject petitioner's belated attempts to apply portions of the 2011 overpayment retroactively for that year instead of against his liability for 2012. Petitioner does not deny that he claimed the benefit of the 2011 overpayment on his 2012 return, which he admits filing late because he understood that there was no penalty in a refund situation. In the ordinary course of events his account record, which is not in evidence, would reflect his election on his 2011 original return to apply the overpayment against his 2012 liability. That payment would be applied at the time his 2012 return was due. <u>See</u> sec. 6402(b); secs. 301.6402-3(a)(5), 301.6611-1(h)(2)(vii), Proced. & Admin. Regs. When a deficiency was determined with respect to petitioner's 2011 original return, and the overpayment had already been applied for the subsequent year, interest was assessable in accordance with Rev. Rul. 99-40, 1999-2 C.B. 441. If, as petitioner asserts, his account was constantly in an overpaid condition, little or no interest may have been assessed. We cannot determine, however, what has been or will be done in this regard.

[*9]  Petitioner argues that there was no deficiency at any time because he always overpaid and had overpayments applied for the following year.  However, a deficiency is defined, in relevant part, as "the amount by which the tax imposed * * * exceeds * * * the amount shown as the tax by the taxpayer upon his return".  See sec. 6211(a)(1)(A).  Thus petitioner's failure to report income on his 2011 original return created a deficiency as respondent determined.  See Savage v. Commissioner, 112 T.C. 46, 48 (1999) ("[A]fter applying an overpayment against the taxpayer's liability for another taxable year, the Commissioner is not precluded from subsequently determining a deficiency for the taxable year in respect of which the overpayment was originally claimed and allowed."); Terry v. Commissioner, 91 T.C. 85, 87 (1988).

III.    Jurisdiction Over Interest

Respondent argues and the Court agrees that there is no applicable exception here to the general rule that the Court lacks jurisdiction to determine interest in a deficiency case.  See LTV Corp. v. Commissioner, 64 T.C. 589 (1975); see also sec. 6404(h) (for the limited exceptions not applicable here).

In the absence of a record of payments and assessments on petitioner's account, the wisdom of this rule is apparent.  Petitioner has submitted a memorandum in which he argues about the proper treatment of overpayments in

**[*10]** calculating interest, but those arguments must be saved for a later day in the appropriate proceeding.  <u>See</u> sec. 7481(c).

To reflect the foregoing and respondent's concession,

<u>Decision will be entered for</u>

<u>respondent in the reduced amount</u>

<u>of $3,203</u>.